Joseph **FRIEDMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18617.

United States Court of Appeals Eighth Circuit.

Aug. 9, 1967.

**156**

Bernard J. Mellman, St. Louis, Mo., made argument for appellant; Morris A. Shenker and William H. Mathis, St. Louis, Mo., filed brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee; Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before VOGEL, Chief Judge, VAN OOSTERHOUT and HEANEY, Circuit Judges.

VOGEL, Chief Judge.

Defendant-appellant, Joseph Friedman, was charged by grand jury indictment with having violated 18 U.S.C.A. § 659.[1] Subsequent to indictment and prior to trial appellant moved to suppress certain evidence. After a hearing, the motion was overruled. Thereafter appellant was tried and convicted before a jury and sentenced to four years' imprisonment. This appeal followed.

It is here claimed that error arises from (1) the overruling of appellant's motion to suppress evidence; (2) prejudicial comment made by the prosecutor in the closing argument; and (3) the giving of a prejudicial jury instruction on the meaning of "reasonable doubt." We affirm.

Appellant, Joseph Friedman, was at all times herein relevant an employee of his brother, Louis Friedman, who, so far as the record shows, owns and manages the El-Jay Wholesale Company in St. Louis, Missouri. Appellant has been closely associated with his brother in this business enterprise for many years. He does not occupy the normal employee relationship for he works hours that are convenient to him. Besides appellant and his brother one other person, Sam Wilks, works at the El-Jay Wholesale Company.

---

1. 18 U.S.C.A. § 659 provides in pertinent part:

"Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, * * * from any * * * motortruck, or other vehicle, or from any station, station house, platform or depot * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate * * * shipment of freight * * *; or

"Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; * * *

"Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; * * *."

The El-Jay Wholesale Company sells canned and packaged grocery items, generally in minor quantities to small merchants but it also does some retail business. The physical premises of the company are a single store building divided into two rooms, the front room being the main public store area and the back room a closed storage area. In the public area, merchandise is displayed in the packing cartons, some opened and some sealed, which are stacked from the floor or from tables. There is one front entrance to the store, near to which is a check-out counter presided over by Louis Friedman.

A truckload of soap products which had been stolen from the J. M. Donley Truck Line while in interstate commerce was delivered at the El-Jay Wholesale Company on May 21, 1966, where it was unloaded by the appellant, Joseph Friedman, one Billy Wayne Hopper—the person who had stolen the truck—two of his helpers, and Sam Wilks. Although there is a conflict in the evidence as to the involvement of appellant, the jury evidently believed Hopper, who testified that Joseph Friedman had instructed him as to the location of the truck, where to find the keys and where to deliver the stolen merchandise. Both appellant and his brother, Louis Friedman, were at the store when the stolen soap products were unloaded. Total payment of about $1,000 was given to Hopper for soap products valued at approximately $5,000. This was paid to him at different times and in varied amounts by both the appellant and his brother, Louis.

Subsequently, on May 26, 1966, Bernard J. Welsh, Special Agent, Federal Bureau of Investigation, went to the El-Jay Wholesale Company for the purpose of investigating the May 21st theft of soap products. He arrived at the store at about 11:00 o'clock a. m. and asked to see Louis Friedman. Agent Welsh did not have a warrant for arrest nor a search warrant. After Louis Friedman identified himself, Agent Welsh told him that he had information that certain soap stolen from the J. M. Donley Truck Line

might be in his store. He told Louis Friedman that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to speak to an attorney or anyone else he chose, and that if any stolen soap was found it would be used as evidence in court. Louis Friedman told Welsh that he was welcome to look around the store, that "he had nothing to hide"; whereupon Agent Welsh discovered six cartons of soap in the front public part of the store which had serial numbers corresponding with those stolen on May 21st. Welsh then told Louis Friedman that he would like to look in the back room of the store. Louis informed him that he could look there, but that the door into the back room was locked, and that his brother Joseph, who had the key, was not at the store. Louis then telephoned appellant, Joseph Friedman, who, bringing the key, arrived at the store shortly after 11:30 a. m. Agent Welsh again fully identified himself, and told appellant that he had found stolen soap in the public area of the store and wanted to search the closed rear area of the store. He advised Joseph Friedman of his rights in the same manner as he had advised Louis Friedman, and added further that he had no search warrant and no right to search the rear area "without his brother's permission". After being so informed and advised, Joseph telephoned his cousin, an attorney, who instructed Joseph to open the back storage room door and relinquish any merchandise that did not belong to him. Joseph then voluntarily opened the door and Agent Welsh went into the back room, wherein he discovered cartons of soap with serial numbers corresponding to those stolen on May 21st. Agent Welsh then telephoned his headquarters, requesting that other agents come and help in the removal of the soap. Special Agent Johnson came out to the store pursuant to this request, arriving there at approximately 11:55 a. m.; whereupon he asked the Friedmans whether they had been advised of their constitutional rights. They replied

that they had been so advised and that they had talked to "their attorney, a cousin".

At least 384 cases of soap were found at the store. All except 6 cases were found in the rear storage room. Although Louis Friedman, who at the time of the search indicated that he was the sole owner of the store, orally consented to the search and removal of the soap, he, on recommendation of his attorney, did not sign any written consent to the search or removal. At no time was a warrant applied for or obtained for a search of the premises from which the soap was seized.

I. *Motion to suppress evidence.* Appellant first claims that the trial court erred in overruling his motion to suppress evidence. His position is that the search and seizure yielding the soap introduced into evidence was conducted without first advising *appellant* of his personal right to refuse a warrantless search. He argues that if it is not shown that appellant knew of his right to refuse a warrantless search, any "consent" given by appellant does not constitute a waiver of his Fourth Amendment rights. The general effect of consent to a warrantless search was recently considered by this court in Drummond v. United States, 8 Cir., 1965, 350 F.2d 983, at page 988, certiorari denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542, where we stated:

" * * * The protection afforded by the Fourth Amendment with respect to a search of one's house may, of course, be waived by a consent freely and intelligently given. Whether such consent exists is usually a question which is 'simply one of fact for the trier's determination'. Burge v. United States, 332 F.2d 171, 173 (8 Cir. 1964), cert. denied 379 U.S. 883, 85 S.Ct. 155, 13 L.Ed.2d 89. If the finding is in the affirmative and is supported by substantial evidence, it is not our privilege on appeal to revise it. Maxwell v. Stephens, 348 F.2d 325, 336 (8 Cir. 1965); Burge v. United States, supra, p. 173 of 332 F.2d; Burnside v.

[State of] Nebraska, 346 F.2d 88, 90 (8 Cir. 1965)."

Although, as shown in the factual recital above, there is substantial evidence showing that appellant knowingly consented to a warrantless search, on appeal there is an attempt to invalidate this consent by the claim that the F.B.I. agent failed to make the appellant aware of his *personal right* to refuse a warrantless search of the premises occupied by El-Jay Wholesale Company. Appellant at no time disputes the fact that his brother, Louis Friedman, received a full and adequate warning concerning his constitutional rights, including the right to refuse a warrantless search and that thereafter he consented to the search of which appellant herein complains. Appellant also admits that before opening the back room he called his attorney for advice and was told to "cooperate" with the F.B.I. and that, "If they want to take it with them, let them take it." Nor does appellant dispute the fact that Louis Friedman was the owner of and at all times in general control of the premises which were searched and which yielded the incriminating evidence. In light of these undisputed facts, the fatal defect in appellant's argument is his erroneous assumption that *his* consent as well as that of his brother, Louis Friedman, was necessary to validate a warrantless search. It is well established that one exercising full or substantial control over premises may consent to a search and the evidence seized is admissible against third persons not party to the search proceedings. In United States v. Sferas, 7 Cir., 1954, 210 F.2d 69, certiorari denied, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086, the court stated at page 74 of 210 F.2d:

" * * * the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either. Driskill v. United States, 9

Cir., 281 F. 146; Stein v. United States, 9 Cir., 166 F.2d 851; * * *."

See, also, Drummond v. United States, supra, 350 F.2d at 989; Maxwell v. Stephens, 8 Cir., 1965, 348 F.2d 325, 336–337; Roberts v. United States, 8 Cir., 1964, 332 F.2d 892, 896. The instant case is stronger than any of the aforecited cases. Louis Friedman exercised not merely an equal right to occupy the premises searched but, according to the testimony, was the unquestioned owner as well as general proprietor. Louis Friedman knowingly consented to a warrantless search. Additionally, the evidence is clear that appellant gave implied consent after talking with his attorney. We find that the items produced were properly admitted into evidence against Joseph Friedman.

II. *Prejudicial comment.* The second ground of error raised by appellant involves allegedly prejudicial comment made by the prosecutor in the course of closing argument concerning the failure of the defense to make use of an F.B.I. report—a Jencks Act statement —to question or impeach a principal prosecution witness, Billy Wayne Hopper. At the conclusion of Hopper's direct testimony and prior to cross-examination the prosecution, pursuant to the requirement of 18 U.S.C.A. § 3500, gave the defense statements Hopper had made to an F.B.I. agent. The F.B.I. report and the statements therein could not be formally introduced into evidence for they would constitute a prior consistent statement introduced to bolster the testimony of an unimpeached witness. The question then is whether the government's comment in closing argument achieves this allegedly prejudicially erroneous end, thereby accomplishing by indirect means that which could not have been done directly.

The closing argument comment to which appellant herein objects appears in the record as follows:

" * * * You see when Mr. Randall [defense counsel] * * * got ahold of the report of the FBI, he said, 'I want to tell you I had this report over the noonday,' * * *. Now, this is on June 17th, and he mentioned very intently about Billy Wayne Hopper, and he cross-examined, but he didn't question him one bit from that report, at that time."

At this point defense counsel objected, stating simply:

"Your Honor, I'm going to object to this argument."

Whereupon counsel proceeded to the bench where it was determined, outside the hearing of the jury, that the prosecution could not state that the defense did not use the F.B.I. report to impeach the prosecution witness. The prosecutor then proceeded with his closing argument and made no further reference to the F.B.I. report. The sole objection raised by appellant at the time of trial was the general objection set out above—"I'm going to object to this argument." Subsequent to the colloquy at the bench following the general objection, appellant did not move for a mistrial, make an additional specific objection, renew his general objection, request an explanatory instruction, or in any other way seek to remedy at the trial level that which he now claims on appeal is error. Affirmative action of this type is generally required to preserve a question for appeal. See, Patterson v. United States, 8 Cir., 1966, 361 F.2d 632, 667. Such affirmative action was not here taken. Nor can it be said that the trial court erroneously abused its discretion in failing to admonish the prosecutor for his allegedly prejudicial comment or declare a mistrial as a result of the comment, for such relief was not requested by appellant. See, Keeble v. United States, 8 Cir., 1965, 347 F.2d 951, 956. In any event, as Judge Matthes, speaking for this court, recognized in Isaacs v. United States, 8 Cir., 1962, 301 F.2d 706, when considering the propriety of a closing argument, at page 736 of 301 F.2d:

" * * * The dominating question, always, is whether the argument com-

plained of was so offensive as to deprive the defendant of a fair trial. It is not amiss for us to again point out that in a criminal case, the United States Attorney has imposed upon him a high and important responsibility. He should present the Government's case with vigor and earnestness, and use all legitimate means to bring about a just conviction, but, likewise, he must refrain from indulging in tactics or methods calculated to produce an unjust conviction."

See, also, Birnbaum v. United States, 8 Cir., 1966, 356 F.2d 856, 866; Patterson v. United States, supra.

■ Assuming, without deciding, that the challenged comment was improper, it nevertheless seems clear to us that considered in the context of the trial it could not and did not deprive appellant of a fair trial. This is in fact tacitly recognized by the appellant for, although he generally objected at the time the prosecutor first referred to the F.B.I. report, thereby cutting off any further references thereto, appellant did not subsequently raise any objection, demand any remedial action, ask for a healing instruction, or take exception to failure of the court to give one. If appellant believed that his case was prejudiced in the eyes of the jury as a result of the prosecutor's comment, he would have acted in a timely, appropriate manner to rectify this prejudice before the jury and create an appealable record. Appropriate action was not taken, however, and therefore no issue was preserved for appeal.

■ III. *Instruction on reasonable doubt.* The final claim of error arises out of the trial court's instruction to the jury on the meaning of "reasonable doubt" which, in this court, he claims was " * * * confusing, misleading and prejudicial but, further, tended to infer that proof beyond a reasonable doubt is something less than the highest burden of proof." The trial court stated in its instruction to the jury:

"Let me say to you further on this subject, ladies and gentlemen of the jury, it is not necessary for the government to prove the guilt of the defendant beyond all possible doubt. If that were the rule, few men, however guilty they might be, would be convicted. In this world of ours, it is practically impossible for a person to be absolutely and completely convinced of any fact, which by its nature is not susceptible of mathematical proof and certainty. In consequence, the law is such that in a criminal case it is enough that defendant's guilt be established beyond a reasonable doubt, and not all possible doubt."

Whereupon, appellant's counsel stated:

" * * * Defendant objects and excepts on the latter part of the instruction on reasonable doubt which begins, 'Let me say further,' and ends 'not all possible doubt,' *for the reason that it is not proper law.*" (Emphasis supplied.)

The court made no change in its instruction, submitting the case to the jury on the instructions as given. In the first place, it was the court's duty to instruct on the meaning of "reasonable doubt", Williams v. United States, 4 Cir., 1959, 271 F.2d 703, 705, and failure to do so upon request would constitute error, Holland v. United States, 10 Cir., 1954, 209 F.2d 516, 523; Nanfito v. United States, 8 Cir., 1927, 20 F.2d 376, 378; Blatt v. United States, 3 Cir., 1932, 60 F.2d 481. There is no requirement that particular words be used in the definition, nor is there an accepted standard definition which must be used in explaining reasonable doubt to the jury. Holland v. United States, supra, 209 F.2d at page 523; United States v. Schireson, 3 Cir., 1940, 116 F.2d 881, 883, 132 A.L.R. 1157; cf., United States v. Stoehr, 3 Cir., 1952, 196 F.2d 276, 284, 33 A.L.R.2d 836. As the court stated in *Holland,* supra, at page 523 of 209 F.2d:

" * * * It is sufficient if the jury is given to understand that reasonable doubt as applied to the measure of its persuasion means a real or substantial doubt generated by the evidence or a lack of it; and that beyond

a reasonable doubt means to a reasonable or moral certainty. Wigmore, supra, [on Evidence, 3d Ed., Vol. 9] Sec. 2497."

We think the language used by the trial court here met that requirement and that it did not mislead or confuse the jury, nor was it prejudicial. Additionally, we point out here that Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S. C.A., provides, inter alia:

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*" (Emphasis supplied.)

Appellant's objection or exception failed utterly to comply with that rule. There was complete failure to point out why appellant believed the instruction "not proper law". In Tomley v. United States, 5 Cir., 1957, 250 F.2d 549, certiorari denied, 356 U.S. 928, 78 S.Ct. 716, 2 L.Ed. 2d 759, the court, when faced with a similar problem, stated at pages 550–551 of 250 F.2d:

"* * * Under that rule, [Rule 30, supra] in order to put the trial court in error, it is necessary that the defendant precisely state the grounds of his objection and that the grounds stated point out an error prejudicial to the defendant. Estep v. United States, 5 Cir., 223 F.2d 19, 22."

See, also, Eastman v. United States, 8 Cir., 1946, 153 F.2d 80, 84; Bronstein v. United States, 8 Cir., 1927, 17 F.2d 12, 14; 8 Moore's Federal Practice, § 30.04, n. 6. No adequate specific objection was urged in the trial court and accordingly no appealable issue was therefore preserved. Furthermore, Rule 30 states explicitly that all objections must be raised "before the jury retires to consider its verdict * * *." See, Stegall v. United States, 6 Cir., 1960, 279 F.2d 872; Corbin v. United States, 10 Cir., 1956, 253 F.2d 646. No objection was raised here until after the jury retired to deliberate

its verdict. Additionally, we are not presented here with a situation wherein the plain error rule, Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., should be invoked. Everything about this case is persuasive of the conclusion that appellant was fairly tried and that he was found guilty on very substantial if not overwhelming evidence.

Affirmed.