**UNITED STATES of America,
Appellee,**

v.

**Robert J. BEVANS, Appellant.**

**No. 73–1803.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1974.

Decided May 2, 1974.

Harry O. Moline, Jr., Clayton, Mo., for appellant.

David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

VOGEL, Senior Circuit Judge.

Robert J. Bevans appeals from his judgment of conviction, based on jury verdicts, of misapplying bank funds and of making false entries in the books of a bank in violation of 18 U.S.C. §§ 656 and 1005. Bevans was convicted on three counts of an eleven-count indictment and was sentenced to the maximum term under each count, the sentences to run concurrently and pursuant to the provisions of 18 U.S.C. § 4208(b).

A fairly detailed statement of the pertinent evidence appears necessary. In 1965 the appellant became associated with the Bank of Lincoln County as its executive vice-president and cashier. Approximately one year later Mr. Quincy Kinsler, a local contractor, and the appellant jointly purchased a plot of land suitable for housing development. Thereafter lots from the development were sold to area contractors for the construction of homes. Within the next year Bevans purchased Kinsler's interest in the subdivision and continued the sale of lots to area contractors. One of the builders who purchased lots from the appellant and financed them through the bank was the Bass Construction Company, which was owned and operated by Mr. Burton Bass, Jr. Construction money was borrowed from the bank and placed in an escrow account which was controlled and disbursed by Mr. Bevans.

In August 1971 Harry Benear became associated with Bass Construction Company. Benear took over the internal operations of the company and found that its books and records were in such a state of disarray that he was unable to balance the checkbook. In December 1971 Bevans informed Bass, Jr., and Benear the extent to which they had overdrawn the checking account of Bass Construction, " * * * forty-some thousand dollars in the red." In March 1972 Bass, Jr., decided either to sell the company or to shut down. Benear became the purchaser with funds loaned to him by the Bank of Lincoln County through Mr. Bevans.

Thereafter, Benear met with Bevans regularly to give him status reports on the condition of the company. During the early summer of 1972 a debit balance existed in the checking account of Bass Construction. Bevans advised Benear to write checks on the company account in payment of some debts, and told him to delay payment of others. On June 30, 1972, the bank was holding a considerable number of Bass Company checks.[1] Bevans purchased a 92-acre farm owned by the Bass Construction Company and deposited his cash payment directly into the Bass Company checking account. The trial testimony indicated that this was done in order to cover the then accumulated checks. The checks drawn on insufficient funds then being held by the bank were immediately paid from the proceeds of this purchase. The opening and closing amount in the account of Bass Construction Company on June 30 indicates that the total deposit was needed to cover the checks then being held.[2]

In July 1972 Bevans again began holding Bass Construction Company checks as they were received at the bank. The first check was received by the bank on July 13, 1972, and the last on August 1, 1972. During this time period the bank accumulated a total of $51,222.29 of Bass Company checks drawn on insufficient funds. Counts VI and VII of the indictment relate to entries made in the

1. The record indicates that at this time the bank was holding checks totalling approximately $28,000 which had been drawn on the Bass Construction Company account.

2. A total deposit of $28,464.72 was made by the appellant to the Bass account. Of this total, $18,250 represented a payment for the 92-acre farm. An additional $3,432.25 was a payment by appellant to Bass for the construction of a swimming pool at the appellant's motel. The opening balance on June 30 was $6.71. At the close of the business day the balance was $6.78.

books of the bank during this time period.

In May of 1972 Mr. Emil Hoechst purchased the bank. On June 15 at the board of directors meeting he proposed an audit which Bevans opposed. On July 26 Hoechst was elected president of the bank and on the 27th he ordered an audit. On July 31 and August 1 Bass, Sr., Bass, Jr., and Benear each executed $18,000 unsecured notes payable to the bank at the insistence of Bevans. The proceeds of these loans were credited to the general account of Bass Construction and disbused to cover the accumulated overdraft checks. Count II of the indictment charged that this transaction resulted in the misapplication of bank funds. Hoechst became aware of these unsecured loans and in mid-August Bevans was relieved of his duties at the bank.

The appellant was convicted on three counts of the indictment and on this appeal he challenges the sufficiency of the evidence on all three counts. He also contends that the charge to the jury with respect to Count II—relating to the misapplication of bank funds—was erroneous.

■ We first turn to the appellant's contentions that the evidence was insufficient. The conviction on Count II resulted from the replacement of the checks held by the bank with the proceeds of the unsecured notes executed by Bass, Sr., Bass, Jr., and Benear on July 31 and August 1 of 1972. The appellant argues that the evidence is insufficient in three respects: (1) there is no evidence of loss to the bank; (2) there is no evidence that the defendant misapplied the $54,000 to his own use and benefit; and (3) there is no evidence that the defendant acted with the intent to injure and defraud the bank. From our review of the evidence, we are convinced that the government made a submissible case. In reviewing the sufficiency questions, we bear in mind the principle that:

In resolving the question whether a submissible case was made, we view the evidence in the light most favorable to the Government, * * * and accord to the Government the benefit of all inferences that may reasonably be drawn from the proven facts. Whiteside v. United States, 346 F.2d 500, 502 (8th Cir. 1965), cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed. 2d 1025 (1966).

The jury heard evidence from which it could logically infer that the money was lost to the bank. Bass, Jr., testified that Mr. Bevans told him that he, Bass, Jr., would not be responsible for the note which he signed on July 31. He also indicated in his testimony that the note had not been paid at the time of trial. Mr. John Smith, the present executive officer of the bank, testified that the three $18,000 notes had been charged off in full. Mr. Smith testified that at the time the notes were charged off against the bank's reserve for bad debts it became a loss to the bank. We also note that as a result of these actions the bank was deprived of the use of the money in question. We think this ample evidence to allow the jury to find that the bank lost $54,000 as a result of the appellant's conduct.

■■ We likewise find sufficient evidence to refute the appellant's other two contentions relating to Count II of the indictment. He contends that there is no evidence that he misapplied the monies to his own use and benefit. From the facts presented at trial, we have no doubt that the jury could reasonably conclude that the appellant made the loans so that the individuals involved could complete and sell the houses and thereafter repay their debts to him. This benefit is a sufficient conversion to his own use. United States v. Rickert, 459 F.2d 352, 355 (5th Cir. 1972). Appellant also submits that the evidence is insufficient to show that he acted with the intent to injure and defraud the bank. The jury heard evidence of the appellant's opposition to an audit at the

time that Mr. Hoechst took over the bank. Bass, Jr., also testified that the appellant told him that he would not have to be responsible for the note that he signed. From these facts, the jury could reasonably conclude that the defendant was acting in his self-interest and that he had abandoned his position of trust, thereby intending for the bank rather than himself to bear the consequences of his transactions with Bass Construction.

■ The appellant next contends that there was not sufficient evidence to show that he directed the entry of false statements into the records of the bank. The indictment charged that false entries were made on or about July 20, 1972, and on July 27, 1972. These charges stem from the holding of the Bass Company checks from July 13 to August 1. The evidence relating to Counts VI and VII charging false record entries is sufficient. Testimony at trial indicated that the appellant directed that the Bass checks should be held and therefore not returned by the "midnight deadline"[3] or paid as an overdraft. The amounts therefore were not entries in the overdraft ledger account of the bank. When the checks drawn on the Bass Company account were "kicked out" because of insufficient funds, the bank debited the cash item general ledger account and credited the demand deposit account of the bank. At the opening of the next business day, a reversing entry would be made to the cash items account and the demand deposit account, and the accumulated checks plus any new arrivals would be processed as if they had just been received by the bank on that date. This is referred to in the banking business as "rolling the checks over." Such a "roll-over" had the effect of concealing their status as overdrafts and thus enabled the appellant to omit reporting them to the board of directors as required by Missouri law. V.A.M.S. § 362.275 (1969). The trial testimony

also reveals that the appellant personally ordered the employees of the bank to "roll the checks over." Each day this procedure was used, a bank employee took the accumulated checks and any new ones that had been received to the appellant for his instructions. He personally told the employees to roll the checks over on a number of occasions.

■ The appellant rejoins with the argument that since the "roll-over" had no effect on the total current assets picture of the bank, the entries are not false. Mr. John Smith, the present executive vice-president and cashier of the bank and an ex-bank examiner, testified that the accounting procedures used— debiting cash items instead of debiting overdrafts—did not actually overstate the assets of the bank since both are current assets. Conversely, though, he indicated that the procedure used by the bank—debiting cash items and crediting demand deposits—reflected a misstatement of the current assets of the bank. We feel that this evidence is sufficient for the jury to infer that the entries in the demand deposits and cash items ledgers were false as charged in the indictment. The government is not required to prove all the allegations of the indictment as long as it proves facts charged in the indictment which satisfy the essential elements of the crime. United States v. Trexler, 474 F.2d 369, 371 (5th Cir.), cert. denied, 412 U.S. 929, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973).

■ Appellant also contends that the entries charged in the indictment were not falsely made within the meaning of 18 U.S.C. § 1005, because the entries were not created by the appellant for the purpose of hiding a particular transaction or series of transactions. The testimony at trial indicated that Mr. Bevans instructed the employees to roll the checks over and no witnesses could remember any other situation where

---

3. Under Missouri law, V.A.M.S. § 400.4–302 (1969), the bank could no longer return the

check when it was held past the "midnight deadline."

checks were held and run through the bank day after day. Although checks of other customers were held occasionally, there was no evidence that checks in large amounts were held for long periods of time. The jury also heard evidence that the appellant was regularly informed of the status of the Bass account, both by Harry Benear and an employee of the bank. Although there is testimony which indicates that the accounting procedures used were instituted prior to the time the appellant became associated with the bank, we find that the jury could reasonably conclude from the evidence as a whole that the entries were false within the meaning of § 1005. *See* Meredith v. United States, 238 F.2d 535, 540 (4th Cir. 1956).

■ The appellant also claims that there was no evidence to indicate that he acted with the intent to injure or defraud the bank. The testimony indicated that the appellant did not report the ckecks he was holding to the board of directors as overdrafts. The bank maintained an overdraft account for the purpose of covering insufficient funds checks which it decided to pay. The highest daily balance in this account between June 12 and August 7 of 1972 was $892.75, while the Bass checks drawn on insufficient funds reached a total of well over $50,000. This evidence, together with the already referred to loss of use of the money to the bank, was sufficient to make the case a submissible one for the jury. The evidence that the appellant directed the entries to be made, and that they were false, was sufficient for the jury to accept the inference of the appellant's intention to. injure and defraud the bank as charged in Counts VI and VII of the indictment.

■ Finally, appellant contends that the trial court erred in refusing to give his essential elements instruction. The government argues that this claimed error was not preserved for review in accordance with the provisions of Rule 30 of the Federal Rules of Criminal Procedure. Certainly the attempt here to comply with the strict provisions of Rule 30 leaves something to be desired. *See,* Friedman v. United States, 381 F. 2d 155, 161 (8th Cir. 1967). We find it unnecessary, however, to resolve the issue. Our examination of the court's instructions to the jury convinces us that the instructions, considered as a whole, were correct, adequate and understandably presented.[4] The trial court was not

---

4. The defendant requested the following essential elements instruction:
  Five essential elements are required to be proven in order to establish the offenses charged in Counts I, II, IX and X of the indictment:
  FIRST: The act of misapplying the sum of $42,000 and $54,000 respectively by an officer of a federally insured bank.
  SECOND: Doing such act with the intent to injure or defraud the bank.
  THIRD: Doing such act or acts willfully;
  FOURTH: That as a result, such sums were lost to the bank; and
  FIFTH: Misapplying such sums to the use and benefit of the Defendant.
  The court refused this request but instructed the jury as follows:
    Three essential elements are required to be proven beyond a reasonable doubt in order to establish the offense of misapplication: first, that the Defendant was an officer, agent or employee of, or connected in any capacity with a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation; second, that while being so connected with the bank, he misapplied monies, funds or credits belonging to or entrusted to the care and custody of the bank; and third, that he did such act knowingly, willfully and with the intent to injure or defraud the bank.
    The willful misapplication which is condemned by Section 656, Title 18, United States Code, means something more than irregular, negligent or improper use of the bank's funds, but means the unlawful taking or conversion of the monies, funds or credits of the bank by a bank officer for his own use or benefit, or for the use and benefit of some other person or company other than the bank, and done willfully, with the specific intent to injure or defraud the bank.
    It is not necessary, in order to constitute the offense of willful misapplication, that the bank officer who makes the willful

obliged to use the exact language of a request but could, of course, use its own language. It felt that the charge, considered as a whole, properly included appellant's request. We agree. Friedman v. United States, 381 F.2d 155, 160–161 (8th Cir. 1967); Pritchard v. United States, 386 F.2d 760, 767–768 (8th Cir. 1967), cert. denied, Borchelt v. United States, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968).

We clearly find sufficient evidence on this record to submit the case to the jury on the three counts on which the defendant was convicted. Likewise, the charge to the jury adequately covered the law as applicable to this case and the substance of appellant's requested instructions.

Affirmed.

misapplication derive any personal benefit from the transaction.

Conversion is an unauthorized assumption and exercise of ownership over the property of another by a person to his own use and benefit, or to that of a third person, which deprives the owner of his property permanently or for an indefinite time.

You are instructed that permanent loss to the institution is no part of the offense of misapplication. Restitution is no defense to such an offense. However, in order to show misapplication of funds with intent to defraud, a showing of at least a momentary loss is required. The test is whether or not the bank was defrauded of something, defrauded of its rights to have custody of its funds, or the right of the bank to make its own decisions as to how those funds were to be used.

This instruction adequately covers the substance of the appellant's requested instructions.