**UNITED STATES of America, Appellee,**

**v.**

**Ray J. BERAN and Andrew Kaminski, a/k/a Andrew M. Kaminski, Appellants.**

**No. 76–1314.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 5, 1976.

Decided Dec. 16, 1976.

Rehearing Denied Jan. 10, 1977.

Certiorari Denied March 7, 1977. See 97 S.Ct. 1330.

James W. Heyer, Denver, Colo., for appellants.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N. D., for appellee; Harold O. Bullis, U.S. Atty., Fargo, N. D., on brief.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The appellants, Ray J. Beran and Andrew M. Kaminski, were indicted on twelve counts of misapplication of bank funds in violation of 18 U.S.C. § 656. Each of the counts charge one, or the other, or both of the appellants with the misapplication of bank funds while they were either officers, directors or stockholders of the First National Bank of Belfield, Belfield, North Dakota. Count 1 charged the appellants with misapplication and conversion to their own use of $482,000 of bank funds by selling an unauthorized overissue of bank stock. The alleged "overissue" arose out of a series of stock transfers by the appellants of previously issued capital stock in which the stock certificates were not properly returned and cancelled. At the close of the government's case, the court granted the defense motion, under Fed.R.Crim.P. 29, for a judgment of acquittal on Count 1 because of a failure to prove that monies of, or entrusted to, the bank were involved. After the defense motion for a judgment of acquittal as to the remaining counts was denied, the case was submitted to the jury which found Beran guilty on Counts 7, 9, 10 and 12, and Kaminski guilty on Counts 6, 8, 10 and 11. Both appellants were fined $3,000 and placed on probation for two years with the imposition of any additional sentences suspended. We affirm.

I

The most serious point raised by the appellants is whether the convictions must be set aside because of the prejudicial influence of the Count 1 evidence. Ordinarily, the rule is that error in the admission of evidence

may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it. * * * However, as an exception to the general rule, where the character of the testimony is such that it will create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case, although admonished to do so, a mistrial should be ordered.

*Maestas v. United States*, 341 F.2d 493, 496 (10th Cir. 1965) (citations omitted); *Nash v. United States*, 405 F.2d 1047, 1053 (8th Cir. 1969) (quoting *Maestas* with approval). An even more stringent rule must be applied here because the appellants failed to make a timely motion for a mistrial or a new trial.[1] We cannot reverse unless the prejudicial effect of the Count 1 evidence was so great that the trial court should have ordered a mistrial upon its own motion.[2]

■ The appellants argue that a mistrial should have been ordered because of the prejudicial nature of the Count 1 evidence

itself and because of the importance given to it by the government. The evidence as to Count 1 showed that the appellants defaulted on substantial bank stock loans and on notes of Belfield area investors, and indicated that they might have engaged in misrepresentation and other improper practices as well in connection with the stock transfers. It took twelve days for the government to try its case in chief. During the first eight days of trial, forty-six witnesses testified with respect to Count 1. During the final four days of the government's case in chief, some of the testimony given by the remaining seven government witnesses also pertained to Count 1.

On the other hand, cautionary instructions were given. At two points in the trial, the court instructed the jury "that Count 1 of the Indictment has been disposed of. You are * * * instructed to disregard all evidence received previously insofar as that evidence deals only with Count 1." Additionally, all of the exhibits which pertained only to Count 1 were with-

1. Under Fed.R.Crim.P. 33, a motion for a new trial must be made within seven days after the verdict of finding of guilty unless it is based upon newly discovered evidence. When the briefs were filed on the reconsideration of the motion for a judgment of acquittal under Fed. R.Crim.P. 29 on Counts 2 through 12, the appellants did move in the alternative for a new trial and offered to waive the constitutional protection against double jeopardy. However, the motion was made more than seven days after the verdict and was not initially based upon a claim of newly discovered evidence. Since the time limitations are jurisdictional, the trial court correctly found it was without jurisdiction to consider an untimely motion for a new trial. *United States v. Pitts*, 508 F.2d 1237 (8th Cir. 1974); *United States v. Johnson*, 487 F.2d 1318 (5th Cir. 1974); *United States v. Newman*, 456 F.2d 668 (3rd Cir. 1972); *Rowlette v. United States*, 392 F.2d 437 (10th Cir. 1968).

The appellants subsequently moved for the reconsideration of their earlier motion for a new trial on the basis of "newly discovered" evidence which would show that none of the local investors lost any money and that most of the notes in default at the time of trial have since been paid. The trial court correctly held that this does not constitute newly discovered evidence. *See* Wright, 2 Federal Practice and Procedure § 557 (1969).

The appellants argue that the time within which a motion for a new trial must be made is tolled when the court has before it a Rule 29 motion for judgment of acquittal. We do not agree. While a Rule 29 motion may be combined with a Rule 33 motion, they are governed by very different standards. *Id.* §§ 467 and 553. A Rule 29 motion for a judgment of acquittal will only be treated as a Rule 33 motion if it contains allegations sufficient to constitute a motion for a new trial. *United States v. Baker*, 432 F.2d 994, 995 (10th Cir. 1970). The appellants' oral motion for a judgment of acquittal cannot be so construed. While the subsequently filed "Memorandum in Support of Motion for Judgment of Acquittal" and "Motion for a Mistrial or for a New Trial" do contain sufficient allegations to constitute a Rule 33 motion, they were not filed within the seven-day time period.

2. While the trial court may order a mistrial on its own motion, its power to do so is limited by the double jeopardy clause of the Fifth Amendment. Only if there is an "imperious" or "manifest necessity" for doing so will the ordering of a mistrial come within the recognized exception to the double jeopardy provision. *See Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Wade v. Hunter* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

drawn from the jury's consideration. Furthermore, the jury acquitted the appellants on Counts 2 through 5 [3] which indicated that it was not so overwhelmed by the Count 1 evidence as to be unable to give serious consideration to the remaining counts. It is conceded by the appellants that there is no evidence of a bad faith attempt by the government to prove Count 1 for the purpose of prejudicing the jury as to the other counts. Finally, as we will establish, there was substantial evidence to support each of the jury verdicts. While the matter is not free from doubt, we are unable to conclude that it was reversible error for the .trial court not to order a mistrial on its own motion.

## II

■ The appellants argue that a judgment of acquittal should have been granted as to all of the remaining counts because the government failed to prove criminal misapplication, a specific intent to injure or defraud the bank, or the probability of loss to the bank, which are essential elements of the offense of misapplication of bank funds under 18 U.S.C. § 656.[4] We disagree, a careful review of the voluminous record convinces us that the evidence as to each of the counts when viewed, as we must, in the light most favorable to the government and giving the government the benefit of all favorable inferences reasonably to be drawn from the evidence,[5] was sufficient to sustain the jury verdicts.

■ It is well established that willful misapplication under 18 U.S.C. § 656 means more than maladministration. *Evans v. United States*, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830 (1894) (decided under 12 U.S.C. § 592, the predecessor of 18 U.S.C. § 656); *United States v. Bevans*, 496 F.2d 494, 499 at n.4 (8th Cir. 1974). Conversion of bank funds for personal use, or for the use of another individual or corporation, is encompassed within the definition of criminal misapplication. *United States v. Wilson*, 500 F.2d 715, 720 (5th Cir. 1974); *United States v. Bevans, supra* at 497; *United States v. Kernodle*, 367 F.Supp. 844, 849 (M.D.N.C. 1973). There is evidence as to each of the counts upon which the appellants were convicted that there was a conversion of bank funds for their personal use or for the use of corporations in which they possessed a substantial interest.

Count 6,[6] upon which Kaminski was convicted, involved an unsecured $47,500 loan to a corporation he owned and controlled. While the stated purpose of the loan was to

---

**3.** Counts 2 through 5 alleged that the appellants made self-dealing personal loans with the intent to defraud the bank.

**4.** § 656. *Theft, embezzlement, or misapplication by bank officer or employee*

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any * * * bank * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**5.** After the verdicts were returned, the trial judge indicated he felt the jury reached the wrong result. Such disagreement does not, as intimated by the appellants, constitute grounds for a new trial or a mistrial. It is not for the trial judge to assess the credibility of witnesses, to resolve conflicts in testimony or to weigh the evidence as these are jury functions. *United States v. Hemphill*, 544 F.2d 341, 344 (8th Cir. 1976); *United States v. Powell*, 513 F.2d 1249, 1250 (8th Cir. 1975), *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1976); *United States v. Gaskill*, 491 F.2d 981, 982 (8th Cir. 1974).

**6.** Count 6 is the only count upon which the appellants were convicted involving a transaction when the appellants were no longer on the board of directors of the bank, though both were stockholders, each owning a seventeen percent interest in the bank. 18 U.S.C. § 656 applies to individuals "connected in any capacity" with a bank. This has been construed to include stockholders. *Garrett v. United States*, 396 F.2d 489 (5th Cir.), *cert. denied*, 393 U.S. 952, 89 S.Ct. 374, 21 L.Ed.2d 364 (1968), *rehearing denied*, 393 U.S. 1046, 89 S.Ct. 615, 21 L.Ed.2d 599 (1969).

purchase real estate, the proceeds were instead invested in a highly speculative coal development venture. In support of the loan, unaudited financial statements of the corporation and of Kaminski were tendered, both of which were grossly inflated. Both Beran and Kaminski were charged in Count 10, which involved the appropriation by the appellants of funds of an insurance company wholly owned by the bank for their own use in establishing a bank holding company. The appellants later acquired the insurance agency from the bank; but at the time of the appropriation, the sale had not yet been completed and no sale price for the agency had been established.

Conversion of bank funds for personal use was also charged in Counts 7, 8, 9, 11 and 12 which all involved the fraudulent payment by the bank of various expenses at the instigation of the appellants. In Count 7, Beran was charged with converting bank funds to his own use through the financing of a feedlot feasibility study by the bank. The manager of a car wash owned by Beran, who was without any experience or qualifications in the area, was hired to conduct the study. A room in the car wash was rented at a highly inflated rate. Subsidies to the car wash made by Beran ceased once payments were begun for the feasibility study. Only a very sketchy report was ever submitted. The charge in Count 8 was that Kaminski caused the bank to purchase a Cadillac which he used in Denver and only rarely in Belfield. Both Beran and Kaminski were charged in Count 9, which involved the payment of $1,000 in legal fees incurred by them in connection with the purchase of controlling stock in the bank. Counts 11 and 12 involved the payment by the bank of various expenses of the appellants, some of which are clearly personal and some of which were incurred prior to the date they became bank directors. Clearly, considering the record in the light most favorable to the government, there is evidence as to each of the counts upon which the appel-

lants were convicted that there was a conversion by the appellants of bank funds.

In this case, there is evidence that prior approval of the board of directors was obtained as to some of the transactions which formed the basis for the criminal charges. The valid consent of the board of directors is a defense to the crime of misapplication of bank funds. *Mulloney v. United States*, 79 F.2d 566, 583 (1st Cir. 1935), *cert. denied*, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1936). The board, however, has no authority to approve of a crime or fraud on the bank. *United States v. Morse*, 161 F. 429, 435 (C.D.S.D.1908); *United States v. Sorensen*, 330 F.Supp. 642, 645–646 (D.Mont.1971). Thus, if an intent to defraud through the conversion of bank funds existed, then approval of the board of directors is no longer material to whether there was a misapplication of bank funds.

It is contended by the appellants that the government failed to prove an intent to defraud or injure the bank. Such intent is still considered to be an essential element of the crime even though it is no longer explicitly required by statute. *United States v. Schmidt*, 471 F.2d 385, 386 (3rd Cir. 1972); *Seals v. United States*, 221 F.2d 243, 245 (8th Cir. 1955). Criminal intent may be inferred from all the facts and circumstances of the case. *United States v. Tokoph*, 514 F.2d 597, 603 (10th Cir. 1975); *United States v. Williams*, 478 F.2d 369, 373 (4th Cir. 1973). It "exists if a person acts knowingly and if the natural result of his conduct would be to injure or defraud the bank even though this may not have been his motive." *United States v. Schmidt, supra* at 386. Viewing the record, as we must, in the light most favorable to the government, it is clear that sufficient evidence was presented from which the jury could find that the appellants engaged in the continuing course of conduct to defraud the bank that we have outlined above.

The possibility of future benefit to the bank[7] is not a defense to the charge

---

7. The appellants attempted to justify many of the questioned applications of bank funds on

the ground that the appellants hoped that the bank would ultimately benefit: the feedlot

of misapplication if the other necessary elements of the crime are present. *United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973); *United States v. Boedker*, 389 F.Supp. 360, 366 (M.D.Pa.1974). Nor is the restitution of bank funds a defense as the crime of misapplication is complete when the misapplication occurs.[8] *United States v. Acree, supra* at 1118; *United States v. Morse, supra* at 435. Only a probability of loss to the bank is needed to establish an intent to defraud. *United States v. Bevans, supra* at 500, n.4 (instruction approved). In this case, an actual loss has been shown as the amounts involved in Counts 6 and 7 have never been repaid; and the bank was deprived of the amounts involved in the other counts for several months prior to restitution. Thus, it is clear that sufficient evidence was presented from which the jury could infer that all of the necessary elements of criminal misapplication of bank funds existed.

### III

The appellants finally contend that a mistrial or a new trial should have been ordered because of error in the instructions. A careful review of the instructions given by the trial court and the instructions proposed by the defense reveals that the court gave, in substance, all the instructions to which the appellants were entitled.

We affirm.

study was to benefit the community and thus ultimately the bank; the Cadillac was to be used in the solicitation of business for the bank; the legal expenses incurred in gaining control of the bank benefited the bank because it resolved uncertainty about bank ownership; the funds from the bank insurance agency were to partly defray the expense of establishing a bank holding company which was hoped to benefit the bank. At trial, serious doubt was raised as to most of the attempted justifications, and the jury was entitled to disregard them.

8. At the request of the bank examiner, restitution has been made of all the amounts involved in Counts 8, 9, 11 and 12 and part of the amount covered by Count 10. The loan involved in Count 6 was written off at the request of the bank examiner and has not been repaid. The feedlot study expenses involved in Count 7 have never been restored to the bank, though it should be noted the bank examiner did not direct restoration of the funds on this count.