# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4099

———————

United States of America,      *
       *
         Plaintiff - Appellee,     *
       *    Appeal from the United States
         v.                 *    District Court for the
       *    Western District of Arkansas.
Jim Thomas,             *
       *
         Defendant - Appellant.     *

———————

Submitted: May 12, 2005
Filed: September 1, 2005

———————

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.

———————

LOKEN, Chief Judge.

Former bank officer Jim Thomas was convicted of violating 18 U.S.C. § 1014 by knowingly making a false statement to influence bank action, and of violating 18 U.S.C. § 656 by willfully causing the misapplication of bank funds. His sentencing occurred prior to the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005). When Thomas raised a Sixth Amendment challenge to the mandatory Guidelines, the district court[1] responded by imposing alternative sentences. Thomas now appeals his conviction, challenging the sufficiency of the evidence and a jury

---

[1]The HONORABLE HARRY F. BARNES, United States District Judge for the Western District of Arkansas.

instruction relating to false exculpatory pretrial statements. He also appeals his sentence on various grounds. We affirm the conviction but remand for resentencing in light of Booker.

## I. Sufficiency of the Evidence

Several weeks before Thomas retired as president and branch manager of the Ashdown, Arkansas branch of Regions Bank, he invested $50,000 in EKBA, Inc. During the week before he retired, Thomas served as the initiating loan officer for a $300,000 "lease loan" to EKBA. His actions in causing the Bank to make this loan form the basis for his two counts of conviction. In reviewing his challenge to the sufficiency of the evidence, "we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict." United States v. Flores, 362 F.3d 1030, 1035 (8th Cir. 2004).

The government presented evidence that Thomas knew the Ashdown branch loan committee could not unilaterally approve the $300,000 loan because a loan in excess of $250,000 must also be approved by the loan committee at the Bank's regional headquarters in Texarkana. Thomas nonetheless sent a "loan memo" to the Bank's leasing department in Little Rock stating that the $300,000 loan had been approved by the Ashdown loan committee, knowing that it was leasing office practice to fund a lease loan without verifying that the originating branch had authority to approve the loan. Thus, although the Texarkana office neither received nor approved an application for the lease loan, Thomas's loan memo caused the leasing office to release $300,000 in loan proceeds. EKBA subsequently defaulted. An FBI agent testified that Thomas admitted in a pretrial interview that he bypassed the Texarkana office because he was "afraid the loan would not be approved" and he "wanted to get these loans before he left the employment of the bank."

The first count turned on whether the loan memo Thomas sent to the leasing department contained a knowingly false representation that the Ashdown loan committee had approved the $300,000 lease loan. Thomas was one of four members of the Ashdown loan committee. On appeal, he argues that the evidence was insufficient to convict him on this count because he testified that the committee approved the loan, and another member of the committee testified that Thomas presented the loan and no one objected, which constituted informal approval. This contention misconstrues our standard of review. The determinative question is not whether there was evidence to support Thomas's defense, but whether that evidence was so powerful that reasonable jurors must have entertained reasonable doubt as to his guilt. Two of the three other members of the loan committee testified that the committee never approved the $300,000 loan, and the third member's testimony was equivocal. When combined with the evidence of Thomas's financial conflict of interest, this testimony was sufficient to convict Thomas of sending a knowingly false loan memo to influence the leasing department to fund the $300,000 loan.

The second count accused Thomas of willful misapplication of bank funds, a crime that requires proof of intent to defraud or injure the Bank. See United States v. Beran, 546 F.2d 1316,1321 (8th Cir. 1976), cert. denied, 430 U.S. 916 (1977). Thomas argues there was insufficient evidence that he wrongfully took the Bank's money or intended to defraud the Bank because "[t]he Ashdown loan committee approved the lease loan and the loan was funded." However, as we have noted, there was ample evidence that the Ashdown loan committee never approved the loan. Moreover, because Thomas knew the Ashdown loan committee lacked authority to approve a $300,000 loan without the additional approval of the Texarkana loan committee, the Ashdown loan committee's approval would not have insulated Thomas from the charge that he willfully misapplied bank funds by fraudulently representing to the Little Rock leasing department that Ashdown's approval was sufficient to authorize funding of the loan. Finally, the fact that the Bank mistakenly

funded the loan is irrelevant to Thomas's criminal liability. As Judge Posner said in United States v. Angelos, 763 F.2d 859, 861 (7th Cir. 1985):

> To cause a loan to be made -- knowing that you are violating proper banking procedure . . . from the bank that employs you to a firm in which you have a substantial financial interest -- to do all this and actively conceal what you are doing -- is willful misapplication of bank funds.

The evidence was sufficient to convict Thomas of willfully misapplying the lease loan proceeds with intent to defraud the Bank.

## II. The Jury Instruction Issue

In the government's case in chief, FBI agent Harris testified to statements Thomas made during a one-hour interview at the EKBA facility. Thomas testified in his own defense and denied making many of the exculpatory statements, such as telling Harris the Ashdown loan committee's authority was $300,000 and the lease loan was approved before Thomas invested in EKBA. At the instructions conference, Thomas objected to the second paragraph of the district court's proposed instruction regarding false exculpatory statements because it assumed that Thomas's exculpatory statements to Harris were shown to be false, whereas that was a jury issue. When the district court struck the second paragraph, Thomas objected to the remainder of the instruction on the ground that "it insinuates that the defendant has made false statements previously." The district court then instructed the jury:

> In your evaluation of evidence [of] an exculpatory statement known to be false, you may consider that there may be reasons fully consistent with innocence that could cause a person to give a false statement showing that he did not commit a crime. Fear of law enforcement, reluctance to become involved, and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

-4-

On appeal, Thomas argues that this instruction is improper when the defendant at trial denied making the false exculpatory statements because it "is an improper comment by the trial court as to the weight of evidence and credibility of witnesses." We review jury instructions for abuse of discretion and will affirm "if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004) (quotation omitted). Thomas relies on United States v. Clark, 45 F.3d 1247, 1251 (8th Cir. 1995), where we stated that a false exculpatory statements instruction "is aimed at pretrial fabrications" and is not generally appropriate for casting doubt on a defendant's trial testimony. Like the defendant in Clark, Thomas failed to object on this ground in the district court. In any event, the district court's false exculpatory statement instruction did not instruct the jury that Thomas's pretrial statements to agent Harris were shown to be false, nor did it comment improperly on the credibility of Thomas's trial testimony. Thus, there was no abuse of the court's substantial discretion in formulating jury instructions.

## III. Sentencing Issues

In the district court, Thomas argued that a Guidelines sentence based on enhancements for total loss, abuse of trust, and obstruction of justice would violate the Sixth Amendment because those facts were not found by the jury beyond a reasonable doubt. Anticipating Booker, the district court imposed alternative sentences: a mandatory Guidelines sentence of 51 months in prison based on those enhancements and $382,421.00 in restitution; and an "advisory" sentence of 33 months in prison and $274,474.78 in restitution. The advisory sentence reduced the prison term by eliminating the obstruction of justice enhancement, and reduced the restitution obligation by excluding a second $140,000 loan to EKBA in calculating the Bank's total loss under U.S.S.G. § 5E1.1. There was uncertainty at oral argument as to which sentence Thomas is serving. Thomas challenges both sentences on appeal, urging that we remand for resentencing under Booker. As he preserved this

issue in the district court, we review the court's alternative sentences for harmless error.  See United States v. Archuleta, 412 F.3d. 1003, 1005-06 (8th Cir. 2005).

The district court's primary 51-month sentence imposed under the mandatory Guidelines violated Thomas's Sixth Amendment rights as construed in Booker, because the sentence was based on enhancements found by the court at sentencing. The sentence was also the product of Booker error because it failed to treat the Guidelines as advisory.  The court's reduced alternative sentence demonstrates that these Booker errors were not harmless.

The district court's alternative advisory sentence presents a somewhat closer harmless error question.  We have held, for example, that a Booker error was harmless where the district court announced that it would have imposed the same sentence if the mandatory Guidelines were unconstitutional.  See United States v. Thompson, 403 F.3d 533, 536 (8th Cir. 2005).  Here, however, the court's alternative sentence was not the same, and it was lower *because the court applied the Guidelines differently* by eliminating the obstruction of justice enhancement.  Sentencing under Booker requires, as a "critical starting point," that the district court calculate the advisory guidelines sentencing range in the same manner it would have calculated the range under the mandatory Guidelines regime.  The court then exercises its discretion to impose a sentence within or outside of that range by taking into account the additional sentencing factors enumerated in 18 U.S.C. § 3553(a).  See United States v. Mashek, 406 F.3d 1012, 1016 n.4 & 1017 n.6 (8th Cir. 2005).  In sentencing Thomas, the court stated that "under the guideline sentencing the court notes that obstruction of justice must stand," which strongly suggests that the court's alternative advisory Guidelines sentence was not determined in the manner mandated by Booker. In these circumstances, it is appropriate to remand for resentencing under Booker.

Finally, Thomas challenges the district court's alternative restitution orders on two grounds.  First, he argues that restitution is punishment and therefore Booker

precludes restitution absent a jury finding or admission by the defendant. This contention is foreclosed by our recent decision in <u>United States v. Carruth</u>, No. 04-3568 (8th Cir. Aug. 15, 2005), that <u>Booker</u> does not impact restitution determinations. Second, Thomas argues that restitution may not be ordered because a bankruptcy court discharged the Bank's claim against Thomas that was based on a fraud judgment in a state court lawsuit involving the same conduct. This contention is foreclosed by our decision in <u>United States v. Vetter</u>, 895 F.2d 456, 459 (8th Cir. 1990). Thus, on remand, the district court must determine the appropriate restitution amount applying the preponderance of the evidence standard.

Thomas's conviction is affirmed, and the case is remanded for resentencing. The motion for release pending appeal is denied without prejudice to Thomas renewing the motion in the district court while the proceedings on remand are pending.

_____