**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William M. RICKERT, Defendant-**
**Appellant.**

**No. 71–1521.**

United States Court of Appeals,
Fifth Circuit.

March 30, 1972.

---

Harry M. Hobbs, Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Bernard H. Dempsey, Jr., Claude H. Tison, Asst.

U. S. Attys., Tampa, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendant was convicted on ten counts of embezzling and willfully misapplying funds belonging to a bank of which he was president. 18 U.S.C. § 656.[1]

The defendant seeks reversal on three grounds: first, the jury was infected with prejudicial material in a newspaper release made during the trial; second, the evidence did not sustain the charges as contained in the indictment that the defendant converted the sums of money entrusted to the custody and care of the bank to his own use; and third, the court's instructions misled the jury as to the essential elements of the crime as charged in the indictment.

I.

A newspaper story published during the trial quoted the prosecutor as saying that the bank suffered a $64,000 loss. In fact, only $14,780 was involved in the indictment against defendant. The prosecutor should have avoided any chance of an unfair trial from a prejudicial newspaper release by refraining from discussing the case with the press. Nonetheless, the trial judge carefully determined that no juror had been exposed to the harmful portion of the publication and that it did not interfere with a fair trial.

1. 18 U.S.C. section 656 provides in pertinent part:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

## II.

As to the indictment, the evidence and the court's instructions, the defendant argues the same theory, i. e., that none of the sums charged ever left the bank and that, therefore, the defendant could not be guilty of conversion to his own use. The argument is based on the assumption that a violation of 18 U. S.C. § 656 requires that (1) the misapplied sums be bank property; (2) the bank be shown to have suffered an actual loss as a result of the misapplication; (3) the cash actually left the bank; and (4) the funds converted redound directly to the pecuniary benefit of defendant. We find these assumptions to be without merit.

(1) It is not necessary that the misapplied sums be bank property. Section 656 prohibits the willful misapplication of "any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank." That this covered defendant's activities is shown from his own description of what he did in the statement made by him when he left the bank, which statement was admitted into evidence.

"The facts concerning the misapplication of funds centers around my attempting to cover up my losses on bad loans. This has occurred first through a charge to the W. E. Ritter estate for money to cover an overdraft on Plant City Body & Iron and others. I later charged the account for funds to cover the loss on J. P. Gould's cars, I believe. At one time I also made a charge to cover some repo cars floorplanned by Barney and on which a loss was suffered. I subsequently borrowed $9,000 to make good part of the difference, but had to take some money from the Haines Street Improvement Company. This account is short approximately $14,000. . . .

You will recall that we sold Professional Clothing Care, Incorporated, that I reported it sold to F. Williams.

He had agreed to $10,000 but never would settle. He signed a note for me and I filled in an amount to cover the Ponder note. I subsequently charged two payments to his account, but he does not know the amount of the note. . . . "

\* \* \* \* \* \*

When Keith left the bank, he owed us approximately $6,000 on an installment loan. He asked and Burton Walker signed a note for him for the amount Keith has been paying on this note. However, Burton Walker thinks I have replaced his note with one from Keith. If you wish to keep Burton from learning this, the cards should be removed from the tray now before the loan notices are sent."

(2) Section 656 does not require that it be shown what actual loss the bank suffered, if any. The operative words of the statute are "willfully misapplies." Such activity by a bank president would necessarily tend to impair the stability of the bank. In construing Rev.Stat. § 5209, a predecessor of the present section, the Supreme Court said that "the primary object of the statute was to protect the bank from the acts of its own servants." Coffin v. United States, 162 U.S. 664, 669, 16 S.Ct. 943, 946, 40 L.Ed. 1109 (1896). Nor is it necessary for conviction under Section 656 that the bank suffer any actual loss of cash money. See Golden v. United States, 318 F.2d 357 (1st Cir. 1963); Rakes v. United States, 169 F.2d 739 (4th Cir. 1948), cert. den., 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948). See also United States v. Fortunado, 402 F.2d 79 (2nd Cir. 1968), cert. den., 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1968). Compare Thurston v. United States, 17 F.2d 770 (5th Cir. 1927).

(3) It is not necessary under the statute that cash actually leave the bank. In an early decision under Rev.Stat. § 5209, the Supreme Court stated the test of willful misapplication.

"In order to misapply the funds of the bank it is not necessary that the officer charged should be in actual possession of them by virtue of a trust committed to him. He may abstract them from the other funds of the bank unlawfully, and afterwards criminally misapply them, or by virtue of his official relation to the bank he may have such control, direction, and power of management as to direct an application of the funds in such a manner and under such circumstances as to constitute the offense of wilful misapplication." United States v. Northway, 120 U.S. 327, 332, 7 S.Ct. 580, 583, 30 L.Ed. 664 (1887).

The majority of banking transactions consist of bookkeeping entries rather than the actual transfer of cash. The evidence adduced at trial concerning the many debit and credit machinations of defendant relative to numerous accounts was sufficient to bring him within the ambit of *Northway's* test of willful misapplication.

(4) The final assumption on which defendant bases his argument is that the evidence and court's instructions were not sufficient to support conviction since the indictment charged him with conversion to his own use, while the evidence did not show that the funds converted went directly to defendant for his use. This argument views the words of the indictment "convert to his own use" too narrowly. The misapplication of sums was useful to the defendant's purposes, even though he did not receive direct pecuniary benefit from them. We think that is enough. It is not necessary to decide this case as if the willful misapplication was of no use to any purpose defendant might have had. By the willful misapplication of the funds defendant sought to maintain his position at the bank, prevent discovery of losses from bad loans, and forestall discovery of his illegal activities. This benefit is sufficient "conversion to his own use" under the indictment. We find no reversible error in the court's instructions.

Affirmed.