UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry Austin LANDERS,
Defendant-Appellant.

No. 77–5719.

United States Court of Appeals,
Fifth Circuit.

July 10, 1978.

Euel A. Screws, Jr., Montgomery, Ala., for defendant-appellant.

Charles R. Niven, Asst. U. S. Atty., Barry E. Teague, U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and VANCE, Circuit Judges.

VANCE, Circuit Judge.

This is an appeal by defendant from the United States District Court for the Middle District of Alabama. Defendant was convicted of embezzlement from a bank insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 656. Because the evidence was not sufficient to support the conviction we reverse and order that judgment of acquittal be entered.

For many years Henry Austin Landers was a small town banker. At the time of the events involved in his prosecution he was executive vice president and chief executive officer of the Commercial Bank of Ozark in Ozark, Alabama. In June, 1977 he was indicted under a seven count indictment alleging embezzlement of separate amounts between March, 1973 and May, 1976. The first four counts involved repossessed automobiles and the last three involved credit life insurance proceeds. The case was tried on September 7 and 8, 1977. The district judge granted defendant's motion for acquittal as to the last three counts but submitted the first four counts to the jury. It found defendant guilty as charged in count number one but not guilty under counts two, three and four.

Count one charged that in April, 1976, Mr. Landers embezzled $1,300.00. The em-

bezzlement was contended by the government to have taken place in connection with the repossession and subsequent resale of a 1972 Ford pick-up truck which originally was financed for a customer of the bank named Plemmons. At the time of the repossession of his truck in late 1975 Mr. Plemmons owed over $8,500.00 to the Commercial Bank. Both the truck and certain real estate were mortgaged to secure his loan which was then in default. In addition to repossession of the truck the mortgage on the Plemmons real estate was foreclosed.

The evidence discloses that it was well known by the officers and employees of the Commercial Bank that Mr. Landers had a hobby or sideline involving the reconditioning of repossessed automobiles. His whole family participated in this activity. Mr. Landers was in the habit of advancing the funds required to fix up the bank's repossessed cars. He would have mechanical and body work done by persons in those businesses. He and his family would do the servicing, the minor repairs and the so-called "detailing."[1] He apparently would reimburse himself from the sale proceeds for the cost of outside work and materials and for the labor performed by himself and members of his family.

Vehicles repossessed by banks in the area are usually in very poor condition and as a general rule are not worth the amount owed on them. As a result of Mr. Landers' rehabilitation of repossessed vehicles, they would be put in better condition and would command a better price. In every such transaction detailed by the evidence, the bank came out better as a result of Mr. Landers' sideline.

The Plemmons vehicle was in extremely poor condition at the time it was repossessed by a teller of the bank. The transmission was "messed up" and would only go into one gear. The engine would hardly run and there was a piston noise. The windshield was damaged. The body was filthy and damaged on all four sides. The tires were worn out. Such things as mir-

rors had been jerked off of the body leaving holes. Estimates of the value of the truck at the time of repossession ranged downward from a high of $750.00.

Mr. Landers took the truck, had body work and mechanical work done, and he and his family thereafter concluded the rehabilitation so that it was described by its subsequent purchaser as being in "excellent condition." He sold the truck to a Mr. and Mrs. McDaniel for $2,150.00. The McDaniels made a down payment of $650.00 in cash and gave the bank a note for the balance, which subsequently was paid in full.

Mr. James Wilson is an accountant with the firm which had customarily done the bank's tax work. His firm performed an audit of the bank commencing in May, 1976. During the course of the audit Mr. Landers explained to Mr. Wilson how he handled repossessed automobiles. Mr. Wilson recommended to the board of directors that the bank advance all funds for the rehabilitation of the automobiles and that a better accounting system be utilized. He also reported the practice to the FBI and it was out of his report to the FBI that this prosecution was initiated. With respect to his audit of the Plemmons truck transaction Mr. Wilson testified:

Q. Mr. Wilson, was there any attempt to—by your firm on the four vehicles involved here to ascertain the exact expenses that Landers had incurred in fixing these cars up for resale so that—to see whether the accounting between him and the bank was accurate or not?

A. No, sir; we made no examination of those.

Q. And along this same line, was there any attempt to ascertain the difference in the monies received from the sale of the car, the difference between that sum and the sum applied to the note, was covered by expense items or whether that—that—that difference was—were actual out-of-

---

1. "Detailing" was described as a complete cleaning job for sale—cleaning inside and out, under the hood—"a fine toothbrush type" cleaning.

pocket expenses of Mr. Landers? I think you have answered that question.

A. We did not make any—any examination in respect to that; that information was turned over to others.

Q. Do you—did your firm make any attempt to determine the fair market value of the automobiles at the time they were repossessed in the condition they were?

A. No, sir.

■ There are four essential elements to the charge made in count one of the indictment: (1) that Mr. Landers was an officer of the bank; (2) that the bank was federally insured; (3) that Mr. Landers embezzled or willfully misapplied the monies or funds of the bank; and (4) that Mr. Landers acted with intent to injure and defraud the bank. *United States v. Mann*, 517 F.2d 259 (5th Cir. 1975). With respect to the first two elements there is no substantial dispute. The indictment charged Mr. Landers with converting the monies to his own use. With respect to the third element therefore the trial judge correctly instructed the jury that:

> [I]t must appear beyond a reasonable doubt from the evidence in the case that the funds or monies came into the possession of the employee by virtue of his office or employment or position of trust with the bank and were, while so possessed by him, willfully applied or converted to his own use.

With respect to this element the record is silent. The government proved that the Plemmons truck was repossessed, that Mr. Landers had rehabilitated it, that he resold it to the McDaniels for $2,150.00, and that an $850.00 credit apparently representing proceeds from the truck sale was placed on a ledger sheet of the Plemmons, which sum, together with credits resulting from the real estate foreclosure sale, reduced that particular account to a zero balance. The record does not show whether or by how much the cost of restoration of the truck was greater or less than the difference between $850.00 and the sales price. It does not show in what account the difference if any should appear nor whether it does or does not appear in such account.

■ Appellant urges that from aught that appears the total proceeds of the McDaniel truck sale have never left the bank. In addition appellant contends that the bank consistently profited from Mr. Landers' sideline by receiving amounts larger than it would have realized from sale of the repossessed vehicles had they not been rehabilitated. From an evidentiary standpoint appellant is correct but such proof was not necessary to the government's case, nor was it necessary that the bank sustain a loss in order to show a section 656 violation. *United States v. Rickert*, 459 F.2d 352 (5th Cir. 1972). It is necessary, however, that defendant be proved to have willfully misapplied funds of the bank, *United States v. Northway*, 120 U.S. 327, 7 S.Ct. 580, 30 L.Ed. 664 (1887); *United States v. Rickert, supra*, here alleged to have taken place by Mr. Landers' conversion of such funds to his own use. The fatal deficiency in the government's proof is that it does not show how the funds were applied or that they were misapplied or that there was any conversion by Mr. Landers of any amount or that there was any resulting shortage of any amount in any place where such funds should appear. The record discloses with clarity that the bank's auditor, who was the witness most likely to provide such proof, simply had not undertaken any accounting whatever of the proceeds of the McDaniel sale as between Mr. Landers and the bank. As a consequence, any conclusion that the funds were misapplied can rest on nothing more than conjecture.

With commendable candor counsel for the government concedes that the case disclosed by the record is a wholly different case than was envisioned by the prosecutors before trial commenced. The government simply was unable to prove what it anticipated it could prove. Counsel argues, nevertheless, that there is sufficient circumstantial evidence to support conviction. Whether the evidence is direct or circum-

stantial the test of its sufficiency "is whether taking the view most favorable to the government a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt," *United States v. Warner*, 441 F.2d 821, 825 (5th Cir. 1971), or stated otherwise "whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of innocence." *United States v. Prout*, 526 F.2d 380, 384 (5th Cir. 1976). The total absence of evidence, direct or circumstantial, with respect to at least one of the essential elements of the offense charged compels the conclusion that the *Warner* and *Prout* tests are not met and that the motion for judgment of acquittal should have been granted.

REVERSED WITH INSTRUCTION THAT JUDGMENT OF ACQUITTAL BE ENTERED.