**Paul Ramon HERNANDEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 78–1682.**

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 12, 1979.

Decided Nov. 7, 1979.

Benito Sanchez and Donald C. Schutte, Albuquerque, N. M., for appellant.

R. E. Thompson, U. S. Atty. and Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., for appellee.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Defendant-appellant Hernandez was charged in a 5-count indictment with various banking offenses. The jury found him guilty under Counts III and V, willful misapplication of bank funds in violation of 18 U.S.C. § 656, and under Count IV, unauthorized issuance of a bank obligation in violation of 18 U.S.C. § 1005. He was sentenced to 18-month concurrent terms under Counts III and IV and on Count V was placed on three years probation. On this appeal he attacks the indictment, the admission of certain evidence, the instructions, and the sufficiency of the evidence. We affirm.

Hernandez was president of Plaza del Sol National Bank in Albuquerque, New Mexico. Bank deposits were insured by the Federal Deposit Insurance Corporation. Robert L. Goodwin owned a supermarket which was in financial difficulties. Because of substantial overdrafts, Goodwin was in trouble with Rio Grande Valley National Bank which had the supermarket accounts. Goodwin transferred his banking business to Plaza del Sol where his accounts were handled and supervised by Hernandez.

Hernandez and Goodwin were both indicted. Count I charged Goodwin alone with a false statement to Plaza del Sol to obtain a loan. This count was dismissed pursuant to a plea bargain made by Goodwin. Count II charged Goodwin as a principal and Hernandez as an aider and abettor in the making of another false statement to Plaza del Sol to obtain another loan. Goodwin pleaded nolo contendere to this count, agreed to testify for the government in the trial of Hernandez, and after that trial received a sentence of 18 months imprison-

ment. On the trial of Hernandez the jury was unable to agree on his guilt under Count II, and it was later dismissed.

Counts III, IV, and V charged Hernandez and Goodwin jointly and were dismissed as to Goodwin under the plea bargain. Hernandez was found guilty on each of these counts. Count III charged Hernandez with the willful misapplication of bank funds in the making of a $264,000 loan to Goodwin. Count IV charged Hernandez with the issuance of an unauthorized obligation of the bank in the form of a $200,000 letter of credit to Goodwin. Count V charged the willful misapplication of bank funds by allowing continued overdrafts in the accounts of Goodwin's supermarket to the extent that on December 31, 1976, the overdrafts amounted to a total of $671,075.95. The indictment specified the amounts of the overdrafts at monthly intervals, May 3 to December 1, 1976.

In his attack on the indictment Hernandez says that it is deficient because it does not set forth the manner in which he violated the two statutes. Counts III and V are concerned with violations of 18 U.S.C. § 656 proscribing the willful misapplication of funds with intent to injure the bank. In considering an indictment under § 656, *United States v. Tokoph,* 10 Cir., 514 F.2d 597, 605, says that the test is whether the indictment "contains the elements of the offense charged and apprises the accused of the nature of the charge, so as to enable him to prepare a defense and to plead the judgment in bar."

Hernandez' reliance on *United States v. Archambault,* 10 Cir., 441 F.2d 281, cert. denied 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78, is misplaced. That decision says, Id. at 283, quoting from another decision:

"In a prosecution under 18 U.S.C. § 656, where the offense is set out in the language of the statute, the omission of the means by which the offense was committed does not render the indictment insufficient."

In Counts III and V the charge is set out in the language of the statute, indicates the particular transactions and says that they were unlawful misapplications. Defendant was told that Count III related to a bank loan of $264,000, Count IV to a $200,000 letter of credit, and Count V to specified overdrafts. The indictment, as to all counts, contains the elements of the offenses charged and informs the defendant of the nature of the charges so that he can prepare a defense and plead the judgment in bar. His attack on the indictment has no merit.

Hernandez argues that certain testimony of government witness Cordova was inadmissible hearsay. The issue must be considered in the context of the record at the time. The evidence showed that Goodwin conducted a "float" operation using supermarket accounts in Plaza del Sol and Adobe Acres Branch of the First National Bank of Albuquerque. The purpose of the "float" was to take advantage of the time between the presentation and acceptance of a check by one bank and the clearance of the check by the bank on which it was drawn. The "float" involved substantial amounts and occurred several times a week. Government witness McWilliams, an employee of Goodwin's supermarket, testified to the operation of the "float." Another government witness, Pendergraft, an employee of the First National, testified that Hernandez had requested that the supermarket be permitted to purchase cashier's checks on his, Hernandez', assurance that the checks used in the purchase were good. Flynn, the manager of the Adobe Acres Branch said that Pendergraft had told him of the arrangement to honor the supermarket checks. Goodwin testified that Hernandez told him that he, Hernandez, had guaranteed the supermarket checks used to purchase the cashier's checks which were part of the "float."

After McWilliams, Pendergraft, Flynn, and Goodwin had testified, Cordova was called as a government witness. He was vice-president of Plaza del Sol. He denied knowledge of the overdraft and "float" operations. He was asked about conversations which he had with Flynn and Mears, a First National officer, with reference to the

supermarket checks. He testified, over objection, that after the departure of Hernandez, Flynn called him about a $15,000 check, that he, Cordova, told him Plaza del Sol would not honor the check, and then Flynn asked, "Aren't you aware of the arrangement?" Cordova also testified to a conversation with Mears in which Mears said that Flynn had asked him who would be the contact man at Plaza del Sol. The court permitted Cordova to testify with regard to the Flynn and Mears' conversations upon the government's assurance, sustained by the record, that Plaza del Sol stopped honoring the overdrafts after the departure of Hernandez.

■ The government contends that the testimony was not objectionable hearsay because it was not offered to establish the truth of the matter asserted but rather to establish Cordova's lack of knowledge of the "float" and overdraft operations until after Hernandez had left Plaza del Sol. Before the advent of the Federal Rules of Evidence, F.R.Evid., *United States v. Tijerina,* 10 Cir., 412 F.2d 661, 664, cert. denied 396 U.S. 867, 90 S.Ct. 144, 24 L.Ed.2d 121, held that testimony is not hearsay when it is to prove only that a statement was made and not the truth of the statement. Rule 801(c), F.R.Evid., sustains that holding. See also *United States v. Hodges,* 9 Cir., 566 F.2d 674, 675. The testimony in question related to the fact of Cordova's knowledge, not whether the statements made to him were true or false. The only issue of credibility pertained to that of Cordova who was thoroughly cross-examined by defense counsel. The testimony was properly received.

■ In its instruction the court read the pertinent portion of § 656 and then said: "The word misapplication means an unauthorized or unjustified or wrongful use of a bank's funds." Hernandez says that the instruction is improper because it permits conviction for mismanagement without willful intent to injure. Willful misapplication under § 656 means more than maladministration. *Evans v. United States,* 153 U.S. 584, 588, 14 S.Ct. 934, 38 L.Ed. 830; *United States v. Beran,* 8 Cir., 546 F.2d

1316, 1320, cert. denied 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595.

■ The instructions must be considered as a whole. *United States v. Afflerbach,* 10 Cir., 547 F.2d 522, 524, cert. denied 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546. The court told the jury that a loan is a misapplication if made in bad faith "and not in the honest exercise of official discretion, but with the intent to injure or defraud the bank." Again, the court said that there is no willful misapplication in the absence of "intent to injure and defraud the bank." The instructions summed up the applicable principles thus:

> "Bad loans made in good faith do not constitute criminal misapplication of funds or moneys. When a loan is made in the honest exercise of an official discretion, in good faith and without fraud, for the actual or supposed advantage of the bank, there is no criminal responsibility on the part of the bank officer, although the transaction may be injudicious and unsafe, and even though the transaction results in a loss or damage to the bank. The statute does not punish mere acts of maladministration or negligent use of bank funds.

The instructions comport with applicable law and fully protect the rights of the defendant.

■ Hernandez says that the evidence is insufficient because there is no proof of personal gain for him. Proof of personal gain is not a prerequisite to conviction under § 656. The necessary element is misapplication with intent to injure or defraud the bank, not whether he acted for personal, monetary benefit. *United States v. Gallagher,* 3 Cir., 576 F.2d 1028, 1044–1045, and cases there cited. *United States v. Fortunato,* 2 Cir., 402 F.2d 79, cert. denied 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463, is not to the contrary. It recognizes that the basic element is intent to injure or defraud the bank. Id. at 80. Defendant is not helped by *United States v. Bevans,* 8 Cir., 496 F.2d 494. The instructions there given, id. at 499–500, n. 4, say that to establish

misapplication under § 656 it is not necessary that the bank officer derive any personal benefit. See also *United States v. Wilson,* 5 Cir., 500 F.2d 715, 720. Section 656 has been so construed and applied for many years. See *Breese v. United States,* 4 Cir., 106 F. 680, 684–685.

■ The record shows loans made, overdrafts honored, unchecked "float" operations, and letters of credit issued, all in sums which total hundreds of thousands of dollars. The instructions properly stated the law, were understandable, and were fair to the defendant. The evidence sustains the verdict. We find no error.

Affirmed.