**UNITED STATES of America, Plaintiff,**

v.

**Norman FREDERICK, Defendant.**

**No. 82 10019 01.**

United States District Court,
D. Kansas.

Dec. 3, 1982.

U.S. Atty. Jim J. Marquez, Asst. U.S. Atty. Jackie Williams, Wichita, Kan., for plaintiff.

Marvin C. Pendergraft, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This matter comes before the court on motions filed by the defendant seeking to dismiss a fifteen count indictment in whole or part on theories of breach of an agreement, prosecutorial vindictiveness, and that many of the counts are multiplicious or duplicitous. A motion to sever certain counts for separate trials has also been filed. Defendant initially moved to suppress statements made in the course of an agreement with the United States, however this motion has been withdrawn. As to the remaining motions, the parties have briefed the issues and presented oral arguments.

The indictment returned against defendant charges seven counts of violation of 18 U.S.C. § 656 which proscribes the embezzlement or wilful misapplication of funds of a national or federally insured bank.[1] The remaining eight counts of the indictment charge defendant with violating 18 U.S.C. § 1005 which in part prohibits certain persons from making a false entry in a record, statement·or report of a national or insured bank.[2] The indictment alleges that defendant, during his employ with two banks, authorized the making of loans to both real

---

1. 18 U.S.C. § 656 provides:

 Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

 As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has ·become a member of one of the Federal Reserve banks; and "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

2. 18 U.S.C. § 1005 provides:

 Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

 Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

 Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System— .

 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

 As used in this section, the term "national bank" is synonymous with "national banking

and fictitious persons though the loan proceeds were in fact intended for his own use. The indictment further alleges that he made false entries in the bank records to conceal these banking transactions.

### Motion to Dismiss Indictment

Well before the return of the indictment, defendant approached the government seeking an agreement not to prosecute in exchange for his cooperation in identifying and assisting in the prosecution of other individuals for various banking violations. On January 13, 1981, negotiations resulted in a written contract.[3] Essentially, it provided that defendant would not face prosecution for his banking activities if he cooperated as directed in an investigation of persons he had implicated, and if the investigation provided sufficient information to cause the filing of charges by the United States or return of indictments by a grand jury. Whether there was sufficient information to present to a grand jury, or to file charges, was a determination explicitly left to the judgment of the United States Attorney's Office.

It developed that there were no grand jury presentments, or charges filed against other persons. Defendant now seeks to dismiss his indictment alleging that the government failed to comply with the terms of the agreement. The heart of his defense of breach of contract is that the government did not pursue a good faith investigation of individuals he had implicated, and therefore this breach in effect prevented fulfillment of the further contingencies that he cooperate in the investigation as directed and that others be prosecuted for banking violations. Defendant argues that this matter is controlled by *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and related cases which enforced promises made by the prosecution in consideration for, or inducement of, guilty pleas. *See, e.g., United States v. Bowler,* 585 F.2d 851 (7th Cir.1978); *United States v. Ewing,* 480 F.2d 1141 (5th Cir. 1973); *United States v. Carter,* 454 F.2d 426 (4th Cir.1972).

While the court is satisfied the government performed pursuant to the agreement, defendant's reliance on *Santobello* is otherwise inappropriate since no plea bargain, or other action amounting to waiver of constitutionally protected rights, is involved here.[4] An agreement which in-

---

association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; and "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

**3.** *See* Exhibit A, Motion to Dismiss Indictment, Dk. # 10. The agreement states:

This is to confirm that the United States Attorney's office for the district of Kansas hereby agrees to not prosecute you in regard to bank transactions now known to the government involving yourself and the Union National Bank and University State Bank, in consideration and contingent upon the following:

1. That you cooperate and participate as directed by this office in the investigation of violations of federal laws by persons and institutions alleged by you as having previously violated said laws.

2. That the above investigations provide sufficient information to cause a grand jury to return indictments for such violations, and/or the United States Attorney's office to file an information or informations regarding the same. Whether there is sufficient information for a grand jury presentation, or filing of charges by this office is solely within the judgment of this office.

3. That you will make yourself available as a witness in any proceeding required for the prosecution of the aforementioned violations.

4. Should you fail to meet any of the conditions herein, this agreement shall be null and void, and this office will pursue charges against you on all known violations of federal law.

5. This agreement specifically excludes any crime involving treason, homicide, other capital offenses, perjury and any crime not already known to the office as evidenced by Federal Bureau of Investigation reports in custody of this office.

**4.** Some courts have applied *Santobello* to certain instances where the government failed to honor a specific plea proposal which it had previously extended. *See, e.g., United States v. Calabrese,* 645 F.2d 1379 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *Cooper v. United States,* 594 F.2d

duces no detrimental reliance on the part of the defendant does not involve the due process considerations which apply, for instance, to the plea bargaining process. However, it is possible that an agreement that does not involve a plea may nonetheless involve a forfeiture of certain protected rights. For example, in *United States v. Rodman*, 519 F.2d 1058 (1st Cir.1975), the court affirmed an order by the district court dismissing an indictment on the basis that investigators for the Securities Exchange Commission breached an agreement with the defendant not to recommend his prosecution by the United States Attorney in exchange for information. The district court had found that under the pretext of the agreement, and while defendant was divulging substantial, self-incriminating information, the Securities Exchange Commission was actively contemplating a criminal reference report which included the defendant. To determine if similar prejudice occurred in this case, the court, in an earlier order,[5] invited defendant to demonstrate the specific nature of any detrimental reliance which may have resulted from performance under the agreement. No such showing has been made.

■ In the prior order, the court denied defendant's request for an evidentiary hearing to inquire into the scope of the government's investigation and its decision not to prosecute others. As that order indicates, the court believes that certain uncontroverted facts, and the language of the agreement, are determinative of the issue defendant raises. It is evident that an investigation was commenced and that defend-

ant was interviewed on one occasion by an F.B.I. agent. It is the government's position that on the basis of contacts with defendant and certain persons implicated by him, as well as examination of subpoenaed documents, the decision was made not to attempt prosecution of others. Defendant responds that it was anticipated that, given the nature of the alleged crimes under investigation, it would be necessary for him to personally review certain subpoenaed documents.[6] Defendant argues that in not being permitted to inspect these documents he was prevented from fully cooperating with the investigation. This presumably hindered the prosecution of those he had accused.

■ The agreement, however, states that defendant was to cooperate and participate in the investigation as directed, not that he was to direct the course of the investigation. Moreover, as already indicated, the agreement left sole discretion to the United States Attorney's office to determine whether there was sufficient evidence on which to proceed against other individuals. Even apart from this provision of the agreement, the prosecution historically retains broad discretion regarding decisions of when and whether to prosecute. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Kysar*, 459 F.2d 422 (10th Cir.1972); *United States v. Cox*, 342 F.2d 167 (5th Cir.), *cert. denied sub nom. Cox v. Hauberg*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

■ Defendant further contends the indictment should be dismissed due to vindic-

12 (4th Cir.1979). In the instant case, no assertion has been made that a plea proposal was summarily withdrawn by the United States.

**5.** *See* Memorandum and Order filed July 16, 1982, Dk. # 23.

**6.** Defendant refers the court to an affidavit, Dk. # 27, in which a former United States District Attorney for the District of Kansas states that after the agreement was executed he directed an Assistant United States District Attorney to supervise the investigation, and to subpoena documents relating to Small Business Administration guaranteed loan activities. He further states that at one time it was contemplated

that defendant would help review certain of these documents for possible illegal activity of other individuals.

The fact that defendant was not later requested to examine these records, however, is not an indication, as defendant insists, that the government was not proceeding in a good faith manner in its investigation. The government contends that its review of these records revealed they were an insufficient basis for prosecution. At any rate, the contract did not explicitly or implicitly require the United States to share subpoenaed documents with defendant regardless of the utility of those records.

tiveness on the part of the prosecution. Defendant asserts that despite the agreement not to prosecute, the government threatened and sought an indictment on additional charges which were not the focus of earlier plea negotiations. Apparently, plea bargaining prior to the agreement concerned five felony counts. Negotiations resumed after the government informed defendant of its decision not to pursue charges against others. When defendant refused to plead, and instead threatened to attempt to enjoin criminal prosecution, the government countered with the prospect of an indictment containing additional counts. After defendant's unsuccessful attempt to secure a civil injunction, *John Doe v. United States,* No. 82–1223, unpublished decision (D.Kan. March 19, 1982), the fifteen count indictment was presented to the grand jury.

Defendant relies on the line of cases following *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), arguing retaliatory prosecution based upon improper motives. *Perry* involved a defendant who, after attacking his conviction on appeal, faced later prosecution on more severe charges. In similar cases involving post-trial retaliations, courts have found vindictive prosecution where defendants were punished for exercising their statutory or constitutional rights. *See, e.g., Jackson v. Walker,* 585 F.2d 139 (5th Cir.1978); *James v. Rodriguez,* 553 F.2d 59 (10th Cir.), *cert. denied,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). *See also* Vorenberg, *Decent Restraint of Prosecutorial Power,* 94 Harv.L.Rev. 1521, 1541–42 (1981).

A different analysis, however, is required where a defendant alleges vindictive prosecution concerning pretrial plea negotiations. Two recent United States Supreme Court decisions illustrate this difference. In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court found no constitutional violation where the prosecution, during plea negotiations, threatened to reindict defendant on more serious charges if he did not plead guilty. The Court distinguished *Perry,* where a state unilaterally imposed a penalty upon a

defendant for exercising his statutory right of appeal, from the plea bargaining situation where "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. at 668. Underlying the holding in *Bordenkircher* is a recognition that exposure of a defendant to difficult choices is inevitable in a system which both tolerates and encourages the negotiation of pleas. *Id.* at 364, 98 S.Ct. at 668. More recently, in *United States v. Goodwin,* —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Court rejected the application of a presumption of vindictiveness where a defendant who had initiated plea negotiations later decided against pleading, and was subsequently charged with more serious offenses. The Court reaffirmed the view that negotiations in a pretrial setting involved different considerations, stating that "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.* at —— U.S. ——, 102 S.Ct. 2493, 73 L.Ed.2d 85.

In the instant case, when plea negotiations resumed following the government's decision not to prosecute others, defendant was free to accept or reject any offer of a plea bargain. The prior agreement, moreover, did not foreclose the government's ability to fully resume negotiations. The court denies defendant's motion to dismiss the indictment on grounds of breach of agreement and vindictive prosecution.

Motions to Dismiss Counts

*Multiplicity*

Defendant is charged under 18 U.S.C. § 656 with either embezzling or wilfully misapplying bank funds on several different occasions, and is further charged with violating 18 U.S.C. § 1005 for making false record entries to conceal the true nature of these transactions. Defendant asserts that the same facts concerning each alleged transaction could theoretically be used to prove either a § 656 or § 1005 violation, namely, the making and processing of a loan by the bank. Defendant argues that

**1042**

to charge violations of both statutes as to each alleged transaction is multiplicious.

 An indictment is multiplicious if it charges a single offense in several counts. *United States v. Thompson,* 624 F.2d 740 (5th Cir.1980). The danger in multiplicity of charges is that it may lead to multiple sentences for a single offense, or it may unduly prejudice the jury by creating the impression that defendant has committed several offenses where there may have been but one violation. *United States v. Carter,* 576 F.2d 1061 (3rd Cir.1978); *See,* Wright & Miller, I *Federal Practice and Procedure, Criminal* § 142, at 475–76 (1982).

 The determination of whether one offense or separate offenses are charged is whether each count requires proof of a fact which the other does not. *Demier v. United States,* 616 F.2d 366 (8th Cir.1980); *Rosenhoover v. Hudspeth,* 112 F.2d 667 (10th Cir.1940).[7] Conviction of a crime of either embezzlement or wilful misapplication of funds under § 656 requires proof that (1) the defendant is an officer, director, agent or employee of a national or insured bank, (2) who embezzles or wilfully misapplies bank funds, (3) with the intent to defraud or injure the bank.[8] On the other hand, conviction of a false entry under § 1005 requires proof that (1) the defendant is an officer, director, agent or employee of a national or insured bank, (2) who makes a false entry in any book, report, or statement of such bank, (3) with the intent to injure or defraud the bank, or deceive any officer of the bank, or any agent or examiner appointed to examine the affairs of the bank.

 It is apparent that proof of a violation of § 656 does not require that embezzlement or wilful misapplication be accomplished or accompanied by a false entry. The purpose of the provision proscribing false entries is to assure that an inspection of a bank's books and records will reveal a true account of the bank's condition. *United States v. Darby,* 289 U.S. 224, 226, 53 S.Ct. 573, 574, 77 L.Ed. 1137 (1933); *United States v. Krepps,* 605 F.2d 101 (3rd Cir. 1979). The false entry may be accomplished not only by an actual misstatement but also by an omission of material information. *United States v. Krepps, Id.* at 109. Who the ultimate beneficiary of a loan is may constitute such an omission. Defendant's motion to dismiss multiplicious counts is accordingly denied.

*Duplicity*

Defendant also moves for dismissal of counts 1 and 14, arguing these counts are duplicitous. The basis for defendant's motion is that both counts charge a single violation of § 656 but allege that defendant committed two distinct offenses, namely that the defendant did "wilfully embezzle" and "misapply monies."

---

**7.** Similarly, the test of multiplicity for double jeopardy purposes is that the same act or transaction may constitute a violation of two statutory provisions where each provision requires proof of an additional fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The focus is on the statutory elements of the offense, and separate offenses may be shown despite substantial overlap in the evidence offered to establish the crimes. *Iannelli v. United States,* 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1293, n. 17, 43 L.Ed.2d 616 (1975).

**8.** While § 656 does not contain language requiring intent to injure or defraud the bank, nevertheless courts have consistently required such intent when construing acts prohibited by this statute. *See, e.g., Hernandez v. United States,* 608 F.2d 1361 (10th Cir.1979); *United*

*States v. Krepps,* 605 F.2d 101 (3rd Cir.1979); *United States v. Docherty,* 468 F.2d 989 (2d Cir.1972).

Prior to revision of the Code in 1948, the substantive elements of offenses which now appear in §§ 1005, 656 and 334 were contained in 12 U.S.C. § 592. That statute included the requirement of intent to "injure or defraud" the bank or "deceive" a bank officer or agent appointed to examine the bank's affairs. *United States v. Docherty,* supra at 994. Following the 1948 revision, this intent requirement continued to appear in §§ 1005 and 334, but not in § 656, despite the representation of the revisor that: "The revised section without changing in any way the meaning or substance of existing law, clarifies, condenses, and combines related provisions largely rewritten in matters of style." Revisor's Note, 18 U.S.C. § 656.

 A duplicitous indictment charges two or more distinct crimes in a single count. *United States v. UCO Oil Co.,* 546 F.2d 833 (9th Cir.1976) *cert. denied* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Where counts are duplicitous the jury is prevented from acquitting or convicting on each separate offense, and duplicity may further conceal the specific charge on which a defendant may be found guilty. See, Wright & Miller, supra at 475.

 Defendant's argument poses the question, insofar as acts of embezzlement or wilful misapplication are concerned, whether § 656 contains one offense or separate offenses. The crime of embezzlement is, of course, of common law origin. It has been defined as "the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895). Wilful misapplication of bank funds, on the other hand, is of statutory origin.[9] It has generally been construed by courts to reach acts not falling within the common law definition of embezzlement. *Williamson v. United States,* 332 F.2d 123, 133, n. 15 (5th Cir.1964). *See also* cases cited in *United States v. Docherty,* 468 F.2d 989, 994 (2d Cir.1972). An example is where bank funds are misappropriated by someone who was not previously entrusted with possession. *See United States v. Holmes,* 611 F.2d 329 (10th Cir.1979).

 It is possible that the same evidence could prove either embezzlement or wilful misapplication, depending on whether a defendant who was entrusted with possession of funds converted them to his own use. Nevertheless, the court believes that since these are separate offenses, defendant should be apprised before trial of which crime is alleged in counts 1 and 14. The court denies defendant's motion to dismiss counts 1 and 14, but will require the government to make an election, within 10 days of the date of this order, of which alleged offense it intends to prove at trial.

## Motions to Sever

Defendant offers two separate motions to sever. Defendant moves to sever counts 1, 2, and 3 (concerning alleged loan to a fictitious person) from counts 14 and 15 (alleged loan to a different fictitious person) from all other counts (alleged loan transactions to real persons) and have a separate trial on each group of counts. Defendant argues the two sets of counts involving fictitious persons are unrelated, having allegedly occurred nearly three years apart. Defendant further argues that since these counts involve charges of embezzlement or false entry the proof of intent required differs from other counts alleging misapplication of bank funds. And concerning this issue of variance of proof of intent, defendant has filed a separate motion to sever and try separately all counts involving misapplication of funds from counts charging embezzlement and false entry.

 As to the question of proof of intent as an element of the crimes of embezzlement, wilful misapplication, and false entry, the court believes the intent required to commit these offenses is similar.[10] In any event, appropriate instructions to the jury will insure that each alleged offense is understood and distinguished. As to defendant's assertion that the charges are unrelated in time and substance, the court believes the indictment satisfies Fed.R. Crim.P. 8(a) since the offenses charged are "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The common scheme or plan is the alleged embezzling or wilful misapplication of bank funds over a period of nearly three years. While Fed.R.Crim.P. 14 permits the court to order separate trials

---

**9.** Act of June 3, 1864, § 55, 13 Stat. 116.

**10.** *See, e.g., United States v. Landers,* 576 F.2d 94 (5th Cir.1978); *United States v. Scheper,* 520 F.2d 1355 (4th Cir.1975), requiring intent to deceive or injure the bank as an element of embezzlement. *See also* cases cited in footnote 8 as to wilfull misapplication. The false entry provision in 18 U.S.C. § 1005 contains an explicit intent requirement.

**1044**

of otherwise properly joined counts, defendant has not demonstrated that prejudice will result from a single trial of all the offenses charged in the indictment. Defendant's motions to sever are accordingly denied.

IT IS THEREFORE ORDERED that defendant's motion to dismiss the indictment, motions to dismiss multiplicious and duplicitous counts, and motions to sever counts for separate trials be and are hereby denied.

IT IS FURTHER ORDERED that the United States make an election within 10 days of the date of this order, of one of the offenses alleged in counts 1 and 14.