**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KAREN R. WELLER,

    Defendant-Appellant,

No. 99-3268

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 98-CR-40112)

---

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), for the District of Kansas, Topeka, Kansas, for Defendant-Appellant.

James E. Flory, Assistant United States Attorney (Jackie N. Williams, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **HENRY,** and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Karen Weller was convicted of embezzling money from the Fidelity Bank and Trust Company in Topeka, Kansas, in violation of 18 U.S.C. § 656. She asserts on appeal that the district court should have granted her motion for judgment of acquittal, or alternatively granted her a new trial. She also claims the district court erroneously increased her sentence. We affirm.

## I

### Background and Proceedings Below

On June 3, 1996, $32,000 in cash was taken from the night deposit vault at a branch of Fidelity Bank. At the time of the offense, Karen Weller was the manager of that branch. Three employees were working at the bank that afternoon: Ms. Weller, Sharon McDaniel, and David Easterling. At 4:30 p.m. Mr. Easterling and Ms. McDaniel audited the vault's contents. Ms. McDaniel then went home, leaving Mr. Easterling and Ms. Weller to finish closing the bank. Each bank employee who was allowed access to the bank after hours was given a different alarm code. The bank's records indicate that the alarm was secured at 6:18 p.m. by someone using Ms. Weller's alarm code. The two employees then left the bank. Ms. Weller went to a nearby mall where she made a purchase with a credit card at 6:37 p.m.

The vault from which the money was stolen had two locking mechanisms, one operated by a key and the other by a time-delay combination lock. The latter could be engaged by turning the dial through a specified sequence of numbers, which locks the door and activates a delay period of approximately ten minutes. If the combination is not utilized, the time-delay function is rendered inoperative, enabling someone to enter the vault with only a key and without the ten-minute delay period. On June 3, Ms. Weller secured the vault with the key, unobserved by Mr. Easterling. She testified at trial that she did not remember whether she had spun the combination to engage the second locking device and accompanying time-delay mechanism.

Bank policy prevents any employee from possessing both the key and the combination to the vault. On the day of the theft, Mr. Easterling had custody of the key and gave it to Ms. Weller to secure the vault. The two employees then placed the key in an envelope, sealed and signed the envelope, and placed it in a teller drawer. This contravened bank policy, which required that the signed, sealed envelope be placed inside a locked safe deposit box.

The bank's records indicate that at 7:18 p.m. that evening, the bank was entered by someone using Ms. Weller's alarm code and resecured approximately four minutes later. The next morning, two tellers arrived at work and opened the vault. They observed that the cash box had been opened and the reserve cash was

-3-

missing.  The thief had not taken any one dollar bills, mutilated bills, or "bait money."[1]  The envelope containing the vault key appeared to have been opened. It also appeared that the time-delay combination lock had not been activated the night before, allowing quick access to the safe using the key alone.

After discovery of the theft, Ms. Weller was placed on administrative leave and then fired from her position at the bank.  She was later charged in a one-count indictment with embezzlement and misapplication of $32,000 from the bank in violation of section 656.  She was convicted of embezzlement following a jury trial, sentenced to fifteen months' imprisonment, and ordered to pay $32,000 in restitution to the bank.

## II

### Discussion

Ms. Weller raises five arguments on appeal.  First, she contends the government failed to prove embezzlement or misapplication of monies as those crimes are defined by statute.  Second, she claims the indicted charge was duplicitous and the district court erroneously refused to require the government to elect whether to proceed with proof that she either embezzled or misapplied the

---

[1] "Bait money" is a bundle of traceable bills containing an exploding dye pack, to be given to robbers during a theft and used to track them thereafter.

bank funds. She also contends the court impermissibly admitted evidence of her poor financial situation to provide motive for the crime, and denied her request to use a contested document to refresh her recollection while testifying. Finally, Ms. Weller challenges the court's upward adjustment of her sentence based on its finding that she committed perjury during trial testimony. We review each claim in turn.

## A. Proof of Embezzlement and Misapplication

The statute under which Ms. Weller was charged, 18 U.S.C. § 656, applies wherever the employee of a federally insured bank "embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits" of that bank. Ms. Weller argues that the evidence was insufficient to convict her of either embezzlement or misapplication of funds, the two actions with which she was charged. Embezzlement requires proof of "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *United States v. Holmes*, 611 F.2d 329, 331 (10th Cir. 1979) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895)). Ms. Weller suggests that, because the crime occurred after the bank had closed for the business day, her presence was unauthorized and therefore her possession of the funds was not

lawful. In other words, she claims the evidence might be sufficient to support a conviction for burglary and larceny, but not for embezzlement.

We agree with the district court that the distinction Ms. Weller attempts to draw concerning the timing of the crime and her authority to be present in the bank is not relevant to the question of whether, as the bank's branch manager, she had lawful possession of the money or was a person to whom the money had been entrusted. The relevant inquiry is not one of timing, since "[a]ll crimes of embezzlement involve an unlawful act at some point." *United States v. Campbell*, 52 F.3d 521, 524 (5th Cir. 1995) (per curiam). Rather, the question is whether a bank employee has been given "all the means for effective access to and control of the money by virtue of a special trust placed in her by her employer." *United States v. Whitlock*, 663 F.2d 1094, 1107 (D.C. Cir. 1980) (per curiam); *see also Campbell*, 52 F.3d at 524 (employee had constructive legal control of funds where bank had vested her with "control and authority over the funds in the usual course of routine banking transactions"). As branch manager, Ms. Weller was given an alarm code, the combination to the safe, and access to the safe key, and as such she was a person to whom the bank's money had been entrusted. *See, e.g., Whitlock*, 663 F.2d at 1112 ("by virtue of [defendant's management position] and the special access she was given to the key and the combination, the funds in the vault were under her effective control" and she was guilty of embezzlement).

Because Ms. Weller was found guilty of embezzlement and the evidence was sufficient to convict her on that count, we need not consider the weight of evidence relating to the alternative charge of misapplication of funds. *See United States v. Bell*, 154 F.3d 1205, 1209 (10th Cir. 1998) ("if an indictment charges several acts in the conjunctive, the jury's 'verdict stands if the evidence is sufficient with respect to any one of the acts charged.'") (quoting *Griffin v. United States*, 502 U.S. 46, 56-57 (1991)).

### B. *Duplicity*

Ms. Weller also argues that her indictment for "embezzlement and willful misapplication of funds" was duplicitous and that the government should have been required to elect one charge or the other before proceeding. She stresses the danger that some jury members might vote to convict on embezzlement and others on willful misapplication, effectively denying her the right to a unanimous jury verdict. The district court considered this issue before trial and determined that the charge was not duplicitous and that any danger of non-unanimity could be cured by appropriate limiting instructions.

If embezzlement and misapplication are separate offenses in section 656, a charge of "embezzlement and misapplication" would be improperly duplicitous. If, however, they are merely different means of committing a single offense, no

duplicity issues arise. *See generally Richardson v. United States*, 526 U.S. 813, 817 (1999) (stressing that a jury cannot convict unless it finds unanimously that each element of a crime has been proven, but that the jury need not always agree on which of several underlying facts make up that element).

We are convinced that the enumerated actions are alternative means of violating section 656, not separate offenses. As the Eleventh Circuit determined in *United States v. Acosta*, 748 F.2d 577, 579 (11th Cir. 1984):

> Section 656 of Title 18 embraces but a single generic offense, the offense of willfully *taking* the money of a bank by one of its employees, which offense may be committed in several alternative ways: embezzling (a taking), abstracting (a taking), purloining (a taking) and misapplying (a taking).

*See also United States v. Marquardt*, 786 F.2d 771, 779-80 (7th Cir. 1986) ("any proof sufficient to support embezzlement necessarily is sufficient to support misapplication") (quoting *Acosta*, 748 F.2d at 580); *but see United States v. Frederick*, 551 F.Supp. 1035, 1043 (D.Kan. 1982) (finding that embezzlement and misapplication are separate offenses). The logic of these cases is consistent with past holdings within this circuit. *See Holmes*, 611 F.2d at 331 ("Misapplication covers acts not covered by embezzlement."); *Theobald v. United States*, 3 F.2d 601, 601-02 (8th Cir. 1925)[2] (no duplicity in an indictment for "embezzle[ment],

---

[2] Until 1929, what is now the Tenth Circuit was part of the Eighth Circuit.

abstract[ion] and willful misappli[cation]" because "gravamen" of charge was the same).[3]

In any case, the jury here received a limiting instruction stating that it must find unanimously either for embezzlement or misapplication, and it voted to convict Ms. Weller of embezzlement. Were there any danger of a divided jury opinion over which charge was the proper one upon which to convict, this jury instruction cured such danger. *See generally United States v. Cardell*, 885 F.2d 656, 668 (10th Cir. 1989) ("The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice.").

---

[3] This conclusion may appear inconsistent with our decision in *United States v. Hill*, 835 F.2d 759 (10th Cir. 1987), which reasoned that "by including all of those means within the definition of one offense, Congress did not intend those means to be interchangeable." *Id.* at 763. *Hill* involved a situation in which the concepts at issue were arguably mutually exclusive. *See id*. at 763-64 (holding under 18 U.S.C. § 641 that "stealing" is not same as "converting" because latter concerns one who obtained property legally but thereafter wrongfully exercised dominion). In any event, to the extent *Hill* cannot be reconciled with *Holmes* and *Theobold*, the earlier cases govern. *See, e.g., Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.")

## C. Poverty Evidence

At trial, the government introduced evidence of Ms. Weller's financial history. Ms. Weller sought to exclude this evidence in a motion *in limine*, claiming that evidence of a defendant's financial situation is inadmissible to prove she had the motive to commit a financial crime. The court denied the motion and allowed introduction of the challenged evidence. We review a district court's rulings on evidentiary matters and motions *in limine* for abuse of discretion. *See Davoll v. Webb*, 194 F.3d 1116, 1136 (10th Cir. 1999).

The following financial evidence was presented at trial. At the time of the theft, Ms. Weller had over $18,000 of credit card debt and all of her cards were charged to the limit. On the day of the theft, she wrote numerous checks despite having no funds in her checking account. A few days later she made three cash deposits to her account totaling $1,150. A few weeks after the theft, Ms. Weller purchased a used car for $5,500 in cash. And in the months following the theft she made cash deposits of approximately $19,000 to her account.

Traditionally, evidence of poverty has not been admissible to show a motive for committing crime. Not only would allowing such evidence be unduly prejudicial to poor defendants, but it does not, in fact, prove much—even wealthy people may commit financial crimes in hope of amassing still more money. *See United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999); *but see United*

*States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984) (stating that need for money is "decidedly relevant" in proving motive for financial crimes like larceny and embezzlement).

Nevertheless, situations in which poverty evidence is used to supply motive can be distinguished from those in which financial evidence is introduced to show a sudden change in a person's financial status. In some cases, "[a]n unexplained abrupt change of circumstances is not merely proof of motive, but also amounts to circumstantial evidence of the crime." *Mitchell*, 172 F.3d at 1109. For example, *Mitchell* gave a hypothetical example of a "notoriously broke" defendant who pays for several purchases in quarters the day after a laundromat is burglarized, concluding that in such a situation his sudden change in circumstances as well as the unusual method of purchase would have "obvious and significant probative value." *Id.* at 1108.

Here, the Government introduced evidence that Ms. Weller possessed a large amount of cash after the robbery, where before the robbery she had an empty bank account, "maxed out" credit cards, and no other obvious source from which to obtain cash. It appears this evidence of her sudden change in circumstances was offered as circumstantial evidence of guilt and went well beyond the improper use of "poverty as motive." While Ms. Weller offered an alternative explanation for her sudden influx of cash, claiming that she raised the

money by selling off a large number of personal and household goods, weighing these alternative explanations was the proper function of the jury, and the possibility of a harmless explanation for the financial evidence affected its weight, not its admissibility.

**D. *Refreshing Recollection***

In response to the government's evidence concerning her financial situation, Ms. Weller sought to introduce at trial an appraisal of items she claimed to have sold to raise needed funds. The government objected on grounds that the document was hearsay and that no foundation had been laid to show the items had ever been owned by Ms. Weller or were still in her possession at the time she claimed to have sold them. The court sustained the objection. Ms. Weller then testified about the items on direct examination, and defense counsel sought to use the appraisal to refresh her recollection about details related to the value of some artwork she had owned. The government again objected, and the court sustained the objection. Ms. Weller claims this denial of access to needed information violated her constitutional right to testify on her own behalf.

We review the district court's decision to withhold a writing from a witness for abuse of discretion. *See Strickland Tower Maintenance, Inc. v. AT&T*, 128 F.3d 1422, 1430 (10th Cir. 1997). It is true, as Ms. Weller points out, that

anything may be used to refresh a witness' recollection, even inadmissible evidence. *See United States v. Rappy*, 157 F.2d 964, 967 (2d Cir. 1947). However, the court has the discretion to withhold any writing from a witness where the judge believes that the document will be a source of direct testimony rather than the key to refreshing the witness' independent recollection. *See Strickland*, 128 F.3d at 1430. As the district court explained in its denial of Ms. Weller's motion for rehearing, she was able to testify at length about the property she had owned, without consulting the disputed appraisal, and that testimony was not disputed by the Government. Considering the court's prior determination that the evidence was inadmissible and the potential for improper testimony based upon the document, the district court did not abuse its discretion in denying Ms. Weller the use of the appraisal.

### E. Sentencing

At sentencing, the district court determined that Ms. Weller had perjured herself at trial and applied U.S.S.G. § 3C1.1, an enhancement for obstruction of justice, to increase her total offense by two levels. The court found specifically that she committed perjury by testifying that: (1) she did not enter the bank on the evening of June 3, 1996, and take money out of the night deposit vault; (2) on past occasions the security officer had directed her to share her alarm code with

other employees; and (3) she had requested a new alarm code from the bank's security officer but had never received one. With respect to the first finding, Ms. Weller maintains her denial that she committed the crime was simply the equivalent of a "not guilty" plea. With respect to the other two findings, she stresses that certain testimony offered at trial corroborated her statements and that the witness who called those statements into question may have had her own motives to be less than truthful.

A witness commits perjury if, while under oath, "she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). To find perjury automatically every time a defendant takes the stand, denies guilt, but is nonetheless convicted "would impinge upon the constitutional right to testify on one's own behalf." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993). Mere disagreement between the defendant's testimony and the jury's verdict is insufficient to support a finding of perjury. Thus, the Supreme Court requires the trial court to carefully review the evidence and make findings independent of the verdict which specifically identify the testimony at issue and establish that it, in fact, constituted perjury. *See United States v. Smith*, 81 F.3d 915, 918 (10th Cir. 1996). In reviewing the district court's determination, we must defer to the district court's

-14-

ability to judge the credibility of witnesses. *See United States v. Edwards*, 69 F.3d 419, 440 (10th Cir. 1995).

Ms. Weller argues that the weak nature of the case against her renders the evidence legally insufficient to support a finding of obstruction. We disagree. There was strong circumstantial evidence of Ms. Weller's guilt, and the district court's perjury findings reached areas beyond her mere denial of having committed the crime. Although Ms. Weller argues that the two perjury findings related to use of her security access code were the subject of conflicting testimony at trial, the sentencing judge is entitled to weigh that conflicting testimony and to assess its credibility. Giving proper deference to the judge's determination, we find ample evidence to suggest that Ms. Weller perjured herself with the testimony in question.

## III

## Conclusion

For the foregoing reasons, Ms. Weller's request for judgment of acquittal and request for a new trial are **DENIED**.